### PEOPLE v. MOORE.

1. HOMICIDE—FIRST-DEGREE MURDER—CIRCUMSTANTIAL EVIDENCE.
   In prosecution for first-degree murder, evidence, though circumstantial in nature, *held*, ample to enable jury to find defendant guilty beyond a reasonable doubt (Act No. 328, § 316, Pub. Acts 1931).

2. INDICTMENT AND INFORMATION—PRELIMINARY EXAMINATION—CROSS-EXAMINATION.
   In prosecution for first-degree murder, where record discloses that at the preliminary examination defendant's counsel fully cross-examined a witness indorsed upon the information, or at least had the opportunity to do so, denial of defendant's motion to quash the information because court limited or restricted such cross-examination was not error (Act No. 328, § 316, Pub. Acts 1931).

3. CRIMINAL LAW—READING OF TESTIMONY TO JURY.
   Trial court was justified in permitting the reading of the testimony of a witness to the jury at the trial of a prosecution for first-degree murder where defendant's counsel had had full opportunity to cross-examine such witness when testimony was taken at the preliminary examination and officers had made an extended out-of-State trip to locate such witness for the trial but were unable to find her (Act No. 328, § 316, Pub. Acts 1931).

4. SAME—CONFRONTATION OF WITNESSES—READING OF TRANSCRIPT OF TESTIMONY TAKEN AT PRELIMINARY EXAMINATION.
   Reception in evidence upon trial of a charge of first-degree murder of testimony of a witness taken at the preliminary examination at which defendant was represented by counsel who fully cross-examined such witness by reading a transcript

(29)

thereof at the trial did not abridge defendant's constitutional right to be confronted with witnesses upon showing such witness could not be produced at trial (Const. 1908, art. 2, § 19; Act No. 328, § 316, Pub. Acts 1931).

5. SAME—CONFRONTATION OF WITNESSES—CROSS-EXAMINATION.

The right of confrontation is satisfied, in cases of necessity, if the accused has been once confronted by the witness against him in any stage of the proceedings upon the same accusation, and has had an opportunity of a cross-examination, by himself or by counsel in his behalf (Const. 1908, art. 2, § 19).

6. SAME—TRIAL—WITNESSES—EXAMINATION BY COURT.

While, in a criminal prosecution, the trial court should not permit his personal convictions to become apparent to the jury, it is his right, by interrogatories, to clear up any matters which appear to be left in doubt.

7. SAME—EXAMINATION BY COURT—INSTRUCTIONS.

Trial of charge of first-degree murder some eight years after offense was committed held, to have been fair and impartial and not to have invaded defendants' constitutional rights, notwithstanding court did examine some witnesses at considerable length, where it appears many of the witnesses were criminal characters and brought from prison to testify, some refused to testify, and others were evasive, and court gave cautionary instructions, the court's examination being conducted in an effort to bring out the true facts for jury's consideration (Act No. 328, § 316, Pub. Acts 1931).

8. INDICTMENT AND INFORMATION—INDORSEMENT OF WITNESSES DURING COURSE OF TRIAL.

Permission to indorse the name of a witness upon the information during the course of a trial on charge of first-degree murder did not constitute error under the circumstances involved (3 Comp. Laws 1929, § 17254; Act No. 328, § 316, Pub. Acts 1931).

9. CRIMINAL LAW—SEPARATE TRIAL—DISCRETION OF COURT.

Denial of motion for separate trial of two brothers charged with first-degree murder held, not an abuse of discretion under all the facts and circumstances shown by the record (3 Comp. Laws 1929, § 17298).

10. SAME—MISCARRIAGE OF JUSTICE.

Alleged errors in instructions given to jury in trial on charge of first-degree murder and other errors assigned held, not reversible or to have resulted in a miscarriage of justice (3 Comp. Laws 1929, § 17354).

Appeal from Genesee; Elliott (Philip), J. Submitted April 15, 1943. (Docket No. 74, Calendar No. 41,214.) Decided June 30, 1943. Motion for leave to file delayed application for rehearing denied January 13, 1944. Certiorari denied by Supreme Court of the United States March 13, 1944.

Cameron Moore was convicted of murder in the first degree. Affirmed.

*Gilbert Y. Rubenstein,* for appellant.

*Herbert J. Rushton,* Attorney General, and *John L. Roach* and *Sherman M. Bean,* Special Prosecutors, for the people.

STARR, J. Defendant Cameron Moore was tried by jury, convicted of murder of the first degree, and sentenced to life imprisonment. Act No. 328, § 316, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 17115–316 [Stat. Ann. § 28.548]). Having obtained leave, he appeals.

About 7 o'clock in the evening of November 28, 1932, two armed men entered a store in the city of Flint, held up the two employees, Frost and McLaughlin, and took the money from the cash register. As they were leaving the store, McLaughlin grappled with one of them. They fired several shots, fatally wounding McLaughlin, who died without regaining consciousness. Employee Frost held one of them, Stephen Schmeidl, until police arrived and arrested him, the other escaping in an automobile driven by an accomplice. Schmeidl pleaded guilty to murder of the first degree and was sentenced to life imprisonment.

In 1939 defendant Cameron Moore and his brother, John Douglas Moore (referred to in the record as Douglas Moore), were located in an Illi-

nois prison, were returned to Michigan, and charged with the murder of McLaughlin. They were tried by jury, and both were convicted of first-degree murder and sentenced to life imprisonment. Defendant Cameron Moore's motion for a new trial was denied, and he appeals. His brother, codefendant Douglas Moore, has not appealed.

Defendant contends that the evidence presented does not support the jury's verdict. The testimony of the Moore brothers indicates that they were both professional criminals, had been arrested many times, and had served several prison sentences. Employee Frost identified defendant's brother, Douglas Moore, as one of the men who entered the store and shot McLaughlin. There was no testimony directly identifying defendant Cameron Moore as the driver of the car in which the two men escaped from the scene of the crime. However, following his arrest, Schmeidl made a statement to the police that he and the Moore brothers came to Flint for the purpose of robbery; that in committing the crime in question the three of them, armed with revolvers, drove to the store; and that he and Douglas Moore entered the store while defendant Cameron Moore remained in the car and afterward drove his brother Douglas from the scene. In his statement Schmeidl described in detail the facts and circumstances regarding the robbery and murder and the Moore brothers' participation. During the trial Schmeidl denied making such statement to the police and, while admitting his part in the commission of the robbery and murder, denied that the Moore brothers participated with him. He refused to name or to identify the two men who were with him.

There was positive testimony by two or more witnesses that in the afternoon of the day the crime was committed, defendant Cameron Moore, his brother Douglas, and Schmeidl were together in an

apartment of questionable repute in Flint; that the three of them left the apartment together about 6:30 o'clock; and that the Moore brothers returned without Schmeidl at 8:30 and remained in the apartment until about midnight. A woman and another man, who were in the apartment at that time, identified the Moore brothers and Schmeidl as being there together. There was also testimony indicating that the automobile in which the three men drove from Detroit to Flint was the same car which was used at the time the crime was committed and in which the Moore brothers left the apartment about midnight. Defendant and his brother Douglas denied that they were in Flint on the day of the crime, but they produced no testimony corroborating their whereabouts on that day. The above-discussed testimony, together with other evidence, clearly presented a question of fact as to defendant Cameron Moore's guilt, for consideration by the jury. The jury are the judges of the facts; they saw and heard defendant and other witnesses and were in a better position to determine the credibility and weight to be given their testimony. We are convinced that there was ample evidence, though circumstantial in nature, from which the jury could reasonably find defendant guilty beyond a reasonable doubt, of the crime charged. We should not interfere with the jury's determination.

Defendant contends further that the trial court erred in denying his motion, made prior to trial, to quash the information on the ground that upon the preliminary hearing the examining magistrate arbitrarily limited and restricted his counsel's cross-examination of witness Gladys Gould (Dillon). He also contends that the trial court erred in admitting the transcript of the testimony of witness Gould taken at the preliminary hearing. In his brief defendant argues that the reading of such testimony

abridged his constitutional right of confrontation by witnesses against him. Const. 1908, art. 2, § 19, provides in part:

"In every criminal prosecution, the accused shall have the right  *  *  *  to be confronted with the witnesses against him."

It appears that witness Gould was one of the women who lived in the apartment in·Flint where defendant, his brother, and Schmeidl spent a part of the afternoon and evening the day of the crime. At the preliminary hearing witness Gould testified that the three men and another woman and man were present with her in the apartment. She also testified in detail as to conversation and events that took place there during the afternoon and evening. It appears that at the time of the preliminary hearing witness Gould resided in Indiana and had been brought to Flint for examination. The record shows that at the conclusion of her examination, the following occurred:

"*Mr. Roth* (defendant's attorney): Well, if the court please, I have no objection to this witness (Gould) going home today, as far as my cross-examination is concerned, if they will accede to my request and give me a copy or let me peruse one of their copies (of her statement to the police). That's all I want.

"*The Court*: All right.  *  *  *  And the record also shows, it is true, that you were given the other statement, is that correct?

"*Mr. Roth*: That is correct."

The name of Gladys Gould was indorsed on the information, but she was not present at the trial. The prosecution placed a police officer on the stand who testified, in substance, that he had gone to Indiana for the purpose of locating witness Gould and returning her to Flint; that he could not locate her

and was advised that she and her husband had gone to Florida. During the trial, upon the court's instruction, a police officer made another trip to Indiana but was unable to ascertain the whereabouts of witness Gould. Over the objection of defendant's counsel, the transcript of her testimony taken at the preliminary examination was admitted and read.

From our study of the record we are satisfied that at the preliminary hearing defendant's counsel fully cross-examined witness Gould, or at least had the opportunity. We are satisfied that such cross-examination was not arbitrarily limited, and that the trial court did not err in denying defendant's motion to quash the information on that ground. Furthermore, under the circumstances shown as to the inability of an officer to locate witness Gould, the trial court was justified in permitting the reading of her testimony taken at the preliminary hearing. Defendant had been confronted by this witness at the hearing before the examining magistrate, and his counsel had had full opportunity for cross-examination. His constitutional rights were not abridged by the admission and reading of such testimony at the trial. This question was before us in *People* v. *Schepps,* 217 Mich. 406, 413 (21 A. L. R. 658), where we quoted, with approval, the following:

"The prevailing view is that the right of confrontation is satisfied, in cases of necessity, if the accused has been once confronted by the witness against him in any stage of the proceedings upon the same accusation, and has had an opportunity of a cross-examination, by himself or by counsel, in his behalf." 10 R. C. L. p. 968, § 146.

In *People* v. *Myers,* 239 Mich. 105, 108, Mr. Justice Fellows, writing for the court, said:

"One Hazen Howard gave testimony before the examining magistrate of a cumulative nature. Defendant was then present and represented by counsel. * * * The people were unable to locate him (Howard) at the time of the trial. * * * Effort was being made at his home, his last known place of employment, and subpoena had been issued, placed in the hands of officers * * * and he could not be found. The trial judge held, and we agree, that sufficient effort had been made to procure his attendance. The people were permitted to read his testimony given before the magistrate. The defendant had the constitutional right to be confronted by the witnesses. But this right had been accorded to him. He had been confronted by this witness before the examining magistrate and had full opportunity to cross-examine him at length. We had this question before us in *People* v. *Schepps,* 217 Mich. 406 (21 A. L. R. 658), and there fully considered it. We there held that where a defendant was confronted by the witness before the examining magistrate, with full opportunity for cross-examination, his constitutional rights were not abridged by reading the testimony in the trial court, where the attendance of the witness could not be procured."

See, also, 1 Gillespie on Michigan Criminal Law and Procedure, § 474, p. 581.

Defendant contends further that by his attitude, comments, and questioning of the defendant and other witnesses, the trial court unduly prejudiced the jury against him and that he was thereby denied his constitutional right to a fair and impartial trial by jury. We have carefully studied the record in connection with this contention. The crime was committed in 1932, and the trial took place in 1940. Many of the witnesses were criminal characters,

some of them being brought from prison to testify. Certain of them refused to testify or were continually evasive in their answers. The court did examine some witnesses at considerable length, but we are convinced that he was entirely justified in conducting such examinations in an effort to bring out the true facts for consideration by the jury. In *People* v. *Salem*, 224 Mich. 114, we said:

"It is quite true the trial court should not permit his personal convictions to become apparent to the jury. But while this is true it is the right of the court by interrogatories to clarify and clear up any matters which appear to be left in doubt."

"It is within the authority of the trial judge to examine witnesses for the purpose of eliciting facts material to the case. Indeed circumstances may arise upon the trial which will render such action on the part of the court necessary." 38 Cyc. p. 1316.

See, also, 26 R. C. L. § 26, p. 1025; 1 Gillespie on Michigan Criminal Law and Procedure, § 462, p. 570.

In connection with defendant's claim of prejudicial conduct on the part of the trial court, we note that the court instructed the jury in part as follows:

"I am going to say this, in passing,—if, during the course of this case I have in any way indicated my beliefs on questions of fact in this case, if I have indicated my belief as to the guilt or innocence of these defendants, I want you to erase those matters from your mind, because that is a matter wholly for the jury and you are not to be influenced at all at what you may think the court thinks in regard to the facts of this case."

The authorities cited by defendant do not sustain his claim of prejudicial conduct by the trial court. We are satisfied that the trial was fairly and impartially conducted and that defendant's constitutional rights were not invaded.

It was not error to indorse the name of witness Dawson upon the information during the course of the trial. 3 Comp. Laws 1929, § 17254 (Stat. Ann. § 28.980); *People* v. *McCrea,* 303 Mich. 213, 267–275.

Defendant claims the trial court erred in denying his motion for a separate trial. The granting of a separate trial was discretionary with the court, and, under all the facts and circumstances shown by the record, there was no abuse of such discretion. 3 Comp. Laws 1929, § 17298 (Stat. Ann. § 28.1028).

We have examined the instructions given the jury and find no reversible error therein. Other errors assigned and questions presented by defendant do not merit consideration. We find no error resulting in a miscarriage of justice. 3 Comp. Laws 1929, § 17354 (Stat. Ann. § 28.1096).

The judgment of guilty is affirmed.

BOYLES, C. J., and CHANDLER, NORTH, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.