## PEOPLE *v.* CHILDERS

## PEOPLE *v.* LAWSON

1. APPEAL AND ERROR—EVIDENCE—OBJECTIONS.

State's interest in avoiding a new trial in criminal cases and in an orderly trial without unexpected and avoidable delay justifies the refusal by both trial and appellate courts to consider certain constitutional claims by a defendant that are raised in an untimely manner such as waiting until the close of the prosecution's proofs to object to the admission of evidence which defense counsel should have known was subject to constitutional attack.

2. MOTIONS — EVIDENCE — SUPPRESSION — ILLEGAL CONFRONTATION — TIMELINESS.

A motion to suppress evidence relating to an illegal confrontation of an accused must be made before trial when the accused knows of the factual circumstances constituting the illegal confrontation as he is responsible for giving this information to his attorney who is responsible for making the motion to suppress; however, if an accused does not know before trial of the factual circumstances constituting an illegal confrontation, or where other special circumstances make a pre-trial motion impossible, then a motion to suppress may be made during trial.

---

REFERENCES FOR POINTS IN HEADNOTES

[1]  4, 5 Am Jur 2d, Appeal and Error §§ 517, 562–565, 601, 602.
[2]  21 Am Jur 2d, Criminal Law § 344.
[3]  21 Am Jur 2d, Criminal Law §§ 333–344.
[4]  5 Am Jur 2d, Appeal and Error §§ 545, 549, 552, 566–647.
[5, 9]  21 Am Jur 2d, Criminal Law §§ 309–317, 334, 341.
[6–10, 13]  21 Am Jur 2d, Criminal Law §§ 334, 341.
[11]  5 Am Jur 2d, Appeal and Error § 791.
[12]  5 Am Jur 2d, Appeal and Error § 737.
[13]  5 Am Jur 2d, Appeal and Error §§ 791, 806.
[14]  58 Am Jur, Witnesses §§ 689, 734 *et seq.*

3. CRIMINAL LAW—EVIDENCE—ILLEGAL CONFRONTATION—HEARING.

Once a claim of illegal confrontation is raised, regardless of whether made before or during trial, an evidentiary hearing must be held to determine the merits of the claim, and this hearing must be held outside the presence of the jury.

4. APPEAL AND ERROR—QUESTIONS REVIEWABLE—OBJECTIONS.

Court of Appeals would consider the merits of defendant's illegal confrontation claim despite the absence of a timely trial objection, where judicial guidelines regarding such a claim were nonexistent at time of defendant's trial and where a remand for an evidentiary hearing was made unnecessary by a submission of a complete record on appeal.

5. CRIMINAL LAW — EVIDENCE — IDENTIFICATION — ASSISTANCE OF COUNSEL.

Once it is established that an accused was denied the benefit of counsel, all evidence that a witness identified that accused at a confrontation is to be excluded.

6. CRIMINAL LAW—TRIAL—EVIDENCE—IN-COURT IDENTIFICATION.

Not all evidence bearing on the identity of the perpetrator of a crime is inadmissible *per se* under the exclusionary rule relating to an accused's right to counsel during an identification showup for an in-court identification of an accused may still be made if the prosecution is able to establish by clear and convincing evidence that the in-court identification is based upon a witness' observations of that accused at a time other than at the lineup identification.

7. TRIAL — EVIDENCE — IN-COURT IDENTIFICATION — ILLEGAL CONFRONTATION.

Whether an in-court identification of an accused can be made independently of an illegal identification lineup depends upon whether the in-court identification was made by an exploitation of the illegal confrontation or whether it was made by means sufficiently distinguishable to be purged of the primary taint of the illegal lineup identification.

8. CRIMINAL LAW—EVIDENCE—IN-COURT IDENTIFICATION.

Neither the admission of evidence that a witness identified an accused at an illegal confrontation nor an in-court identification without a source independent of that confrontation requires reversal of a conviction if the error is harmless.

9. CRIMINAL LAW—CONFRONTATION—ASSISTANCE OF COUNSEL.

Right to counsel requires more than the bare advice upon arrest that one is entitled to an attorney; an accused should be told that he is entitled to the presence of counsel during a confrontation by witnesses.

10. CRIMINAL LAW—TRIAL—EVIDENCE—IN-COURT IDENTIFICATION— ILLEGAL CONFRONTATION.

A prosecution witness's in-court identification of defendants as the persons who robbed complainant at the filling station where that witness worked was properly allowed where the record clearly and convincingly sustained a finding that this witness's in-court identification was based on sources independent of the admittedly illegal out-of-court confrontations of the defendants inasmuch as the identifying witness had seen defendants in the neighborhood and in the gas station on several occasions, including the afternoon and evening of the robbery, the defendants' faces were familiar to him because he had gone to the aid of the robbery victim and had obtained a good look at the robbers, and this witness had selected defendants' photographs from those shown to him and had thus communicated the robbers' identities to police before the illegal confrontations occurred.

11. CONSTITUTIONAL LAW—CRIMINAL LAW—ERRORS—HARMLESSNESS.

A constitutional error can be regarded as harmless only if the beneficiary of that error can prove beyond a reasonable doubt that it did not contribute to the verdict.

12. APPEAL AND ERROR—CONSTITUTIONAL LAW—EVIDENCE—TAINTED, UNTAINTED—FORMS OF INQUIRY.

The focus of an appellate inquiry regarding illegally admitted evidence should be on the character and quality of that tainted evidence as it relates to the untainted evidence, and not just on the amount of untainted evidence.

13. CRIMINAL LAW—TRIAL—EVIDENCE—TAINTED—HARMLESS ERROR.

Use of tainted evidence regarding a prosecution witness's out-of-court confrontation of defendants, when they were without the assistance of counsel, was harmless error where that same witness made a direct and unequivocal in-court identification of defendants as the robbers of complainant, and this in-court identification was based upon sources independent of the tainted confrontation which did not contradict the untainted in-court identification.

14. Witnesses — Evidence — Trial — Impeachment — Prior
Convictions.

> An adversary's witness may be impeached with evidence of his
> prior criminal convictions, and the impeaching party is entitled
> to show the name or nature of the crimes involved and the
> time and place of those convictions, however, any inquiry into
> matters collateral to the issues, such as the factual details
> of the crime for which that witness was convicted, is in the
> discretion of the trial court.

Appeal from Muskegon, Albert J. Engel, J. Submitted Division 3 May 7, 1969, at Grand Rapids. (Docket Nos. 5,255, 5,277.) Decided December 9, 1969.

Dennis Earl Childers and Jerome Lawson were convicted by a jury of armed robbery. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Paul M. Ladas,* Prosecuting Attorney, for the people.

*Kobza & Kobza,* for defendants Dennis Earl Childers on appeal.

*O'Toole & Jacobi,* for defendant Jerome Lawson.

Before: J. H. Gillis, P. J., and R. B. Burns and V. J. Brennan, JJ.

V. J. Brennan, J. Defendants Jerome Lawson and Dennis Childers were tried by a jury and convicted of armed robbery[1] on January 12, 1968. On appeal they raise two questions common to each, the principal one involving an application of the rules

---

[1] MCLA § 750.529 (Stat Ann 1969 Cum Supp § 28.797).

announced in *United States* v. *Wade* (1967), 388 US
218 (87 S Ct 1926, 18 L Ed 2d 1149), *Gilbert* v. *Cali-
fornia* (1967), 388 US 263, (87 S Ct 1951, 18 L Ed
2d 1178) and *Stovall* v. *Denno* (1967), 388 US 293
(87 S Ct 1967, 18 L Ed 2d 1199).

Around ten-thirty in the evening of October 9,
1967, an Indiana resident named Harold Schreiber
pulled into Moore's Sinclair Service on the corner of
Spring street and Muskegon avenue in Muskegon for
gasoline. After returning from the station office
where he had paid for the gasoline, and while stand-
ing between the pumps and his car, he was ap-
proached by two young men, one seizing his arms
from behind, the other standing before him with a
pistol. The station attendant, a certain Frank
Keenan, seeing Schreiber forcibly held, rushed out
of the station and demanded that Schreiber be re-
leased. The man holding Schreiber's arms reached
into Schreiber's pocket, took his billfold, and then
shoved the victim in Keenan's direction, knocking
Keenan down. The gunman fired at Keenan, missed,
and took off running with his accomplice. A second
shot was fired when the gunman was hit by a can
of oil thrown by Keenan. The robbers fled.

An officer Jurkas of the Muskegon police depart-
ment visited Keenan at his home the following day
and showed him photographs of 25 to 30 different
persons. From these, Keenan picked out Jerome
Lawson's photograph and identified him as the gun-
man. Later that day officer Jurkas arrested Law-
son, told him that "he had a right to have an attor-
ney" and that "he had a right to have one present
during the time of his questioning," and then took
him to Keenan's house, where, after a confronta-
tion, Keenan confirmed his identification. Several
days later, Keenan saw Dennis Childers standing
at the curb in front of his house, talking to two or

three other persons. Recognizing him as the man who had held Schreiber, Keenan phoned the police, but did not pursue the matter after he was told that officer Jurkas was not on duty. Childers drove away after a few minutes. Several days later Keenan picked out Childers' picture from a second group of photographs, and on October 26, officer Jurkas arrested Childers. Following the procedure used with Lawson, Jurkas told Childers that "he had a right to an attorney" and that "he had a right to have [an attorney] present during this time of his questioning", and then took him to Keenan's house, where Keenan identified him as the second man.

At the trial, Keenan related the events of the robbery and photographic identification, and positively identified both defendants. He then corroborated the in-court identification by testifying that he had seen the defendants previous to the robbery, although he had not known their names. According to Keenan, Childers had been a front-seat passenger in a car that pulled in for gas in the afternoon of the day the robbery occurred. Although a passenger, Childers had paid the fifty-cent purchase price. The same car returned about seven that evening with both Lawson and Childers as passengers. Keenan gave the driver permission to work on the car in the station garage on the condition that his passengers, including Lawson and Childers, leave the premises, which they did. Keenan also testified that the defendants had bought cigarettes in the station on several occasions and that he had seen both of them several times in a local grocery. The prosecution elicited only one remark from Keenan concerning his identification of the defendants at the confrontations—that officer Jurkas brought the defendants to his house. A full account

of the confrontations was placed before the jury, however, when officer Jurkas took the stand.

The remaining evidence of guilt was Schreiber's testimony that Lawson "resembled" the gunman. At the close of the prosecution's proofs, the individual trial counsel moved for dismissal of the charges, contending that the absence of counsel at the confrontations rendered all evidence dealing with the identification of the defendants inadmissible. The trial court considered the motions on their merits and denied them on the ground that the requirements of *United States* v. *Wade, supra,* were met when officer Jurkas advised the defendants of their right to counsel. On appeal the defendants reassert that both Keenan's in-court identification and all evidence of his extrajudicial identification were inadmissible. No claim is made that the confrontations were "so unnecessarily suggestive and conducive to irreparable mistaken identification that the defendants were denied due process of law." See *Stovall* v. *Denno, supra.*

It should be noted at the outset that the defendants' trial counsel, by waiting until the close of the prosecution's proofs to object to the admission of evidence which they should have known as subject to constitutional attack, may well have acquiesced to damage that can be undone only by granting a new trial. Yet, the state's interest in avoiding a new trial in such cases, to say nothing of its interest in an orderly trial without unexpected but avoidable delay, justifies the refusal by both trial and appellate courts to consider certain constitutional claims that are raised in an untimely manner. See, *People* v. *Wilson* (1967), 8 Mich App 651. Among these claims, we think, are those arising under *Wade* and companion cases. Thus, the procedure to be followed in raising *Wade* claims and preserv-

ing them for review is that announced in *People* v. *Heibel* (1943), 305 Mich 710, and *People* v. *Ferguson* (1965), 376 Mich 90, for raising the analogous claim of illegal search and seizure:

(1) Where the factual circumstances constituting the illegal confrontation are known to the defendant in advance of trial, the defendant is responsible for communicating them to his lawyer and his lawyer, in turn, is responsible for making a motion to suppress in advance of trial.

(2) Where the factual circumstances constituting the illegal confrontation are unknown to the defendant in advance of trial, or where other "special circumstances" make a pretrial motion impossible, the motion to suppress may be made during trial.

(3) In either event, once the claim of illegal confrontation is raised, an evidentiary hearing must be held to determine the merits of the claim, and this hearing must be held outside the presence of the jury.

Although the procedure for raising the claims of illegal search and seizure and invalid confession[2] is well-established in Michigan, and therefore analogy as well as common sense indicated the need for timely objection in the present case, the above guidelines were yet to be set forth at the time of trial. In view of their nonexistence at the time of trial, and because a remand for an evidentiary hearing is made unnecessary by a complete record, we proceed to consider the merits of the defendants' *Wade* claim, despite the absence of timely objection.

After enunciating the right to counsel at pretrial confrontations, the Supreme Court in *Wade* and companion cases fashioned certain exclusionary rules to ensure the recognition of the right. Under

---

[2] *People* v. *Farmer* (1968), 380 Mich 198; *People* v. *Walker* (1965), 374 Mich 331.

these rules, once it is established that the accused was denied the benefit of counsel, all evidence that the witness identified the accused at the confrontation is to be excluded. *Gilbert* v. *California, supra,* 388 US, at 273 (87 S Ct, at 1957, 18 L Ed 2d, at 1186). Not all evidence bearing on the identity of the perpetrator of the crime is rendered inadmissible by this *per se* exclusionary rule, however. An in-court identification may still be made if, but only if, the prosecution is able to "establish by clear and convincing evidence that the in-court identification [is based] upon observations of the suspect other than the lineup identification." *Wade,* 388 US, at 240 (87 S Ct, at 1939, 18 L Ed 2d, at 1164). The test to be used in determining whether the in-court identification can be made independently of the confrontation is that of *Wong Sun* v. *United States* (1963), 371 US 471 (83 S Ct 407, 9 L Ed 2d 441):

"Whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."

And among the factors to be considered in applying this test are,

"[T]he prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup." *Wade,* 388 US at 241 (87 S Ct, at 1940, 18 L Ed 2d 1165),

Finally, neither the admission of evidence that the witness identified the accused at the confrontation nor an in-court identification without a source independent of the confrontation requires reversal of the conviction if the error was harmless. *Wade,* 388 US, at 242 (87 S Ct at 1940, 18 L Ed 2d, at 1166); *Gilbert,* 388 US, at 272 (87 S Ct, at 1956, 18 L Ed 2d, at 1186).

In applying these rules to the present case, we begin with the assumption (1) that Lawson and Childers had a right to counsel when officer Jurkas presented them to Keenan and (2) that they were denied this right. Although *Wade* and *Gilbert* involve formal confrontations, or lineups, held subsequent to indictment and appointment of counsel, and *Stovall,* where a direct confrontation occurred soon after arrest, was decided against the petitioner, both the language and the reason of these decisions extend the right to counsel to direct confrontations like those in question.[3] At the same time, effectua-

---

[3] "The pretrial confrontation for purpose of identification may take the form of a lineup, also known as an 'identification parade' or 'showup,' as in the present case, or presentation of the suspect alone to the witness, as in *Stovall* v. *Denno, supra.* It is obvious that risks of suggestion attend either form of confrontation and increase the dangers inhering in eyewitness identification." *Wade,* 388 US, at 229 (87 S Ct, at 1933, 18 L Ed 2d, at 1159).

In *Rivers* v. *United States* (CA 5, 1968), 400 F2d 935, the right to counsel was held to apply to a face-to-face encounter occurring shortly after the mail robbery suspects were arrested and while the mail carrier lay seriously wounded on an ambulance stretcher. The court said:

"Any suggestion that the rules announced apply only to formal lineups is seriously weakened by *Stovall.* In that case the suspect was taken to a hospital, before arraignment for possible identification by the victim of an assault. Although the Court expressly declined to apply the *Wade-Gilbert* rules retroactively—so that Stovall got no benefit from them—this is a long way from holding that hospital-stretcher identification is beyond *Wade-Gilbert.* Such a conclusion would be to suggest that the Supreme Court emphasized the absence of formalized police procedure and the absence of an indictment or formal charge to the point that its action in *Stovall* was nothing more than an advisory opinion on the retroactivity of those cases. We decline to impute this to the Court.

tion of this right requires more than the bare advice upon arrest that one is entitled to an attorney. The accused should be told that he is entitled to the presence of counsel during the confrontation. For that reason, the advice given Lawson and Childers was inadequate. See *People* v. *Whisenant* (1968), 11 Mich App 432.

Although the defendants correctly assert that their right to counsel was effectively abridged, we cannot agree with them when they assert that this abridgment requires the reversal of their convictions. Granting the "primary illegality" of the confrontations between Keenan and the defendants, we think the record clearly and convincingly sustains a finding that Keenan's in-court identification had a source independent of the confrontations. Keenan had seen the defendants in the neighborhood and in the gas station on several occasions, including the afternoon and evening of the robbery, and therefore their faces were familiar. Moreover, Keenan viewed the robbery from the station office and then went to Schreiber's aid, thereby getting a good look at the robbers. Finally, Keenan selected their photographs from those shown to him, and thus communicated the robbers' identities to the police before the confrontations took place. We find no error in allowing the in-court identification.

The remaining evidence that falls within the ambit of *Wade*, concerns Keenan's identification of the defendants at the confrontations. This evidence— Keenan's remark that Lawson and Childers were brought to his house and Jurkas' account of the confrontations—should have been barred under the *per se* exclusionary rule of *Wade*, and therefore its use requires reversal unless it can be said that the error was harmless.

In *Chapman* v. *California* (1967), 386 US 18 (87 S Ct 824, 17 L Ed 2d 705), it was said that a constitutional error can be regarded as harmless only if the beneficiary of the error can prove beyond a reasonable doubt that it did not contribute to the verdict. In *Harrington* v. *California* (1969), 395 US 250 (89 S Ct 1726, 23 L Ed 2d 284), however, the Court, while expressly reaffirming *Chapman,* rejected this approach by holding that the use of two nontestifying co-defendants' confessions, which could not fairly be said not to have contributed to the felony-murder conviction in any way, was harmless error. Although the confessions impliedly identified the petitioner as a participant in the attempted robbery, their use was rendered harmless, under the circumstances, by the "overwhelming" evidence of the petitioner's guilt.

If we take the approach of *Harrington,* yet keep in mind the observation made by Harrington's dissenters that "[t]he focus of appellate inquiry should be on the character and quality of the tainted evidence as it relates to the untainted evidence and not just on the amount of untainted evidence," 395 US, at 256 (89 S Ct, at 1729, 23 L Ed 2d, at 289), it is apparent that the use of the tainted evidence in this case was harmless error. If believed, Keenan's untainted testimony provided direct and unequivocal evidence of the robbers' identities, and therefore the defendants' guilt. Unlike the untainted evidence in *Harrington,* it was not contradicted by the tainted. The robbers' identities were communicated to the police at a time when Keenan's memory of their faces was fresh: in Lawson's case, the morning following the robbery; in Childers', several days after Keenan saw him standing in front of his house. Most importantly, their faces were familiar to Keenan when the robbery took place. The

tainted evidence, on the other hand, is merely cumulative of what was well-established by the untainted —that an identification was made. Moreover, in a real sense Keenan did not identify the defendants at the illegal confrontations, but instead only confirmed his identification of familiar faces, made when the robbery occurred and communicated to the police by the means of photographs before the illegal confrontation took place. We think the error was harmless.

The second question raised by the defendants involves the scope of inquiry into past criminal convictions of the adversary's witness where evidence of the convictions is used for purposes of impeachment. At the trial the defense sought to show that Keenan had been convicted of filing a false and fictitious report, and that Keenan had claimed in the report that he had been robbed while on duty in a gasoline station. The trial court allowed into evidence a page of the Muskegon Heights municipal court docket revealing Keenan's conviction, but rejected the offer to show that the report dealt with the robbery of a gas station. The defendants contend that the report's contents are highly relevant to the present controversy and, therefore, were erroneously excluded from the jury's consideration.

In impeaching the adversary's witness with evidence of his convictions, one is entitled to show the name or nature of the crimes involved and the time and place of the convictions. McCormick, Handbook of the Law of Evidence § 43, p 92; 3 Wharton's Criminal Evidence (12th ed) § 934, p 370. The refusal to permit such a showing is reversible error. *Beaudine* v. *United States* (CA 5, 1966) 368 F2d 417. At the same time, however, inquiry into matters collateral to the issues at hand, such as the factual details of the crime for which the witness

was convicted, is in the wise discretion of the trial court. *People* v. *McArron* (1899), 121 Mich 1, 36; *City of Detroit* v. *Porath* (1935), 271 Mich 42; *People* v. *Miniear* (1967), 8 Mich App 591. In the present case, the defense was permitted to attack Keenan's credibility by showing the time and place of his conviction and the nature of the crime involved, that is, filing a false and fictitious report. Although the fact that the report dealt with the robbery of a gas station is seemingly relevant in that Lawson and Childers stood accused of a robbery that took place on the premises of a gas station, it is collateral to any issue presented at trial; that Schreiber was robbed while on the premises of Keenan's station was not only uncontroverted, but testified to by the victim himself. The need for the limitations placed on inquiry into the details of Keenan's conviction is made more apparent by the fact that the prosecution offered to show that the municipal judge had told Keenan he was not actually guilty and that the fine had been suspended, which offer was also rejected by the court. We find no abuse of the trial court's discretion.

Affirmed.

All concurred.