PEOPLE *v.* HAIRSTON

1. CRIMINAL LAW—IN-COURT IDENTIFICATION—ILLEGAL LINEUP—IN-
DEPENDENT SOURCE.
   In-court identifications of defendant as one of two armed
   robbers were properly admitted, even assuming that defendant
   had been subjected to a pretrial lineup without the benefit of
   counsel, where the record showed that the in-court identifications
   had sources sufficiently independent of the lineup and were
   not tainted by the lineup.

2. CRIMINAL LAW—IN-COURT IDENTIFICATION—ILLEGAL LINEUP—IN-
DEPENDENT SOURCE.
   In-court identification of defendant as the robber of a pharmacy
   had a source independent of an allegedly illegal lineup and
   was admissible at trial where the witness testified, at a hear-
   ing concerning the lineup, that she had had a good look at
   the robber's face, and that even if she put the lineup totally
   out of her mind she could still identify the defendant as the
   robber.

3. CRIMINAL LAW—LINEUP—ABSENCE OF COUNSEL—APPEAL AND ER-
ROR—PRESERVING QUESTION.
   Legality of identification lineup in which defendant appeared
   without counsel was not preserved as an issue on appeal where
   defendant knew that he had been in a pretrial lineup and
   that he did not have counsel present and defendant failed to
   make a motion to suppress the testimony before trial and
   also failed to object at trial to the testimony.

4. CRIMINAL LAW—WITNESSES—RES GESTAE WITNESSES—FAILURE TO
PRODUCE—DUE DILIGENCE.
   The people's failure to produce an indorsed *res gestae* witness

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 21 Am Jur 2d, Criminal Law § 368.
   29 Am Jur 2d, Evidence § 371.
   Admissibility of evidence of lineup identification as affected by
   allegedly suggestive lineup procedures. 39 ALR3d 487.
[4]  58 Am Jur 2d, New Trial § 41.
[5]  5 Am Jur 2d, Arrest § 22.
   41 Am Jur 2d, Indictments and informations § 286.

was properly excused where, in a separate evidentiary hearing, the people, through the testimony of the police detective in charge of the investigation, showed that a subpoena had been issued for the witness, that the police checked the witness's home, his place of employment, the city and county jails, the city hospitals, and with neighbors as to the witness's whereabouts, and ascertained that the witness was in Mississippi for a three-week vacation, and where defendant's counsel did not request an adjournment to await the return of this witness, did not object to proceeding without the witness, and failed to indicate that the missing witness could offer relevant or significant testimony if he were present to testify.

5. ARREST—WITHOUT WARRANT—ILLEGAL ARREST—SUBSEQUENT PROCEEDINGS.

Denial of defendant's motion to dismiss the robbery charge against him because he was arrested without a warrant and solely on the basis of a confidential informer's tip was not error where the defendant was regularly bound over to circuit court for trial.

Appeal from Genesee, Earl E. Borradaile, J. Submitted Division 2 October 11, 1971, at Lansing. (Docket No. 10266.) Decided November 22, 1971.

Jefferson Hairston was convicted of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, and *Donald A. Kuebler,* Chief Assistant Prosecuting Attorney, for the people.

*William A. Shaheen, Jr.,* for defendant on appeal.

Before: McGREGOR, P. J., and HOLBROOK and VAN VALKENBURG,* JJ.

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

Holbrook, J. The defendant in a circuit court jury trial was convicted on July 1, 1970, of the offense of robbery armed contrary to the provisions of MCLA § 750.529 (Stat Ann 1971 Cum Supp § 28-.797). On July 28, 1970, he was sentenced to serve a term of not less than 20 nor more than 30 years in prison. Defendant has taken this appeal as of right.

The complaint in this case alleged that "Thomas Gillespie and John Doe did then and there assault one Dale Liikala with a dangerous weapon, to-wit: A pistol, and did take, steal and carry away United States currency in excess of $1 in the presence of and against the will of the said Dale Liikala, said money belonging to Jerry Jurasek, * * * ." The warrant was issued by the district court for the arrest of Thomas Gillespie and John Doe. Thereafter a confidential informer advised one of the police detectives that one Jefferson "June Bug" Hairston was the John Doe mentioned in the complaint and warrant. On December 19, 1969, defendant was arrested and arraigned, and demanded a preliminary examination. At the preliminary examination the defendant was bound over to the circuit court for trial. On January 9, 1970, an information was filed in the circuit court charging the defendant with the offense of robbery armed. On arraignment he stood mute and the court entered a plea of not guilty on his behalf. As stated, after a trial by jury he was convicted.

Defendant raises 3 issues which we consider in proper order.

I.

Did the trial court err in allowing an in-court identification of the defendant where he had been subjected to a pretrial lineup without the benefit of defense counsel?

Defendant claims that the in-court identifications by witnesses Dale Liikala and Arlene Williams were tainted because they were preceded by a claimed illegal lineup at a time when defendant did not have counsel present. *United States* v. *Wade* (1967), 388 US 218 (87 S Ct 1926, 18 L Ed 2d 1149). In *Gilbert* v. *California* (1967), 388 US 263, 272 (87 S Ct 1951, 1956; 18 L Ed 2d 1178, 1186), the Court stated in part as follows:

"The admission of the in-court identifications without first determining that they were not tainted by the illegal lineup but were of independent origin was constitutional error. *United States* v. *Wade* [*supra*] * * * . However, as in *Wade,* the record does not permit an informed judgment whether the in-court identifications at the two stages of the trial had an independent source. Gilbert is therefore entitled only to a vacation of his conviction pending the holding of such proceedings as the California Supreme Court may deem appropriate to afford the State the opportunity to establish that the in-court identifications had an independent source, or that their introduction in evidence was in any event harmless error."

Although there is evidence that the defendant consented to appear in the pretrial lineup without counsel being present, we deem it unnecessary to determine if defendant effectively waived this constitutional right.

On direct examination of the witnesses no mention was made of the pretrial lineup identification of the defendant. This testimony was brought out by defendant's counsel upon cross-examination and, of course, no objections were made. After this testimony was admitted, defense counsel made the following motion out of the presence of the jury:

"Your Honor, on the basis of the testimony of Officer Kostka, it is apparent that the arrest of the defendant was made purely upon the basis of the information received from a confidential informant. And Officer Kostka indicated that when a police car went out and picked up Mr. Hairston that he was under arrest. At that point he was brought back to the police station under arrest, put in a lineup and was identified by certain persons who have confirmed their identification today.

"Now we would move, your Honor, that the charge be dismissed against Mr. Hairston on the ground that at the very inception of this matter he was improperly arrested. That you cannot arrest a person based upon information received from a confidential informant and that the entire proceedings thereafter were therefore improper, and that the identifications which have come up in court today, being predicated upon those initial identifications are also tainted thereby so on that ground, your Honor, we would move that the charge be dismissed against Mr. Hairston."

After the prosecuting attorney stated his reasons for opposing this motion, the defendant's counsel said:

"So, it is our position, your Honor, that Officer Kostka, although he did have knowledge, reasonable cause to believe that a felony had been committed, I don't believe that information from a confidential informant is sufficient upon which to say that there is reasonable cause to believe that Mr. Hairston committed the act. So, I believe that on the basis of Officer Kostka's statements that there was an improper arrest, that the lineup was improper, that the identifications were improper and, therefore, the whole foundation for these identications [sic] in your court today is tainted basically. That's our position, your Honor."

After the trial court ruled: (1) that the arrest was *not* illegal; (2) that the motion was *not* timely made; and (3) that witness Williams could make an independent in-court identification of the defendant, the prosecuting attorney persuaded the trial court to conduct a "separate hearing" to determine if witness Liikala could also make an "in-court identification" of the defendant as one of the robbers. This motion did not raise a *Wade* claim but rather asserted that the arrest was illegal and therefore the entire proceedings were improper.

This Court in the case of *People* v. *Childers* (1969), 20 Mich App 639, 646, ruled that the procedure to be followed in raising *Wade* claims and preserving them for review on appeal is:

"(1) Where the factual circumstances constituting the illegal confrontation are known to the defendant in advance of trial, the defendant is responsible for communicating them to his lawyer and his lawyer, in turn, is responsible for making a motion to suppress in advance of trial.

"(2) Where the factual circumstances constituting the illegal confrontation are unknown to the defendant in advance of trial, or where other 'special circumstances' make a pretrial motion impossible, the motion to suppress may be made during trial.

"(3) In either event, once the claim of illegal confrontation is raised, an evidentiary hearing must be held to determine the merits of the claim, and this hearing must be held outside the presence of the jury."

Our Court in *People* v. *Hutton* (1970), 21 Mich App 312, 327, 328, set forth three rules which the Court would follow in considering appellate challenges to such in-court identifications:

"If it appears from the record by clear and convincing evidence that the in-court identification was

not tainted by the prior identification or if the evidence shows beyond a reasonable doubt that admission of that identification was harmless, and there is otherwise no error, the conviction will be affirmed. See *People* v. *Love* (1969), 18 Mich App 228; *People* v. *Wilson* (1969), 20 Mich App 410; *People* v. *Childers, supra; People* v. *Bratton* (1969), 20 Mich App 523; *People* v. *Nugent* (1969), 21 Mich App 58; *People* v. *Martin, supra* [(1969), 273 Cal App 724 (78 Cal Rptr 552)]. If it can be determined from the record that the in-court identification was tainted and that it does not appear harmless beyond a reasonable doubt, the conviction will be reversed. See *People* v. *Menchaca* (1968), 264 Cal App 2d 642 (70 Cal Rptr 843); *People* v. *Colabella* (1969), 31 App Div 2d 827 (298 NYS2d 40); *People* v. *Hill* (1969), 32 App Div 2d 966 (303 NYS2d 14); *Mason* v. *United States* (1969), 134 App DC 280 (414 F2d 1176). If the record does not permit an informed judgment that the in-court identification had an independent source, or was harmless beyond a reasonable doubt, the case will be remanded for an evidentiary hearing. See *United States* v. *Wade, supra; People* v. *Ballott* (1967), 20 NY2d 600 (286 NYS2d 1). In each of the above postures, the reviewing court in reaching its conclusion will independently scrutinize the record, giving customary weight to the findings of the trial court. See *People* v. *Nugent, supra.*"

The trial court properly ruled that when considering the testimony of witness Williams, that her in-court identification of defendant had a sufficient independent source.[1]

At the separate hearing held outside the presence of the jury to determine if witness Liikala could

---

[1] "*Q.* Well, the fact that you were terrified at the time, isn't this quite possible, that this affected your judgment in identification?

"*A.* No, because I had nightmares three nights later. I said I'd never forget his face, either one of them. I saw their face everywhere I went."

also make an in-court identification from a sufficient independent source, Mr. Liikala testified on direct examination as follows:

"*Q.* Mr. Liikala, on the date of the robbery did you see the face of one of those two robbers who went behind the pharmacy counter?
"*A.* Yes, I did.
"*Q.* And did you get a good look at that face?
"*A.* Yes, I did.
"*Q.* And are you perfectly satisfied that you had a good enough look at that face to be able to identify it?
"*A.* Yes, I did. Yes, I am.
"*Q.* You have seen that face in a lineup, haven't you?
"*A.* Yes, I have.
"*Q.* If you just disregard that lineup entirely, put it completely out of your mind, would you still and are you still able to identify the face you saw out there at the robbery based upon what you saw at the robbery?
"*A.* Yes, I am.
"*Q.* Now just based on your observations of that face at the robbery do you see that face and that man in the courtroom today?
"*A.* Yes, I do.
"*Q.* Where is he?
"*A.* He is sitting in the—on the far left at the end of this table right here in the tan shirt.

"*Mr. Chapman (assistant prosecutor)*: The record reflects, your Honor, that the witness has indicated the respondent Jefferson Hairston.

"*The Court:* It may so indicate.

"*Mr. Chapman:* And I would request the court— we will wait, perhaps counsel has a question.

"*Mr. Forrest (defense counsel)*: I have no further questions.

"*Mr. Chapman:* And I would request the court, then, to make a finding on the record that the record

that the witness Liikala also has an adequate basis for identifying this witness in court independent of the lineup.

"*The Court:* The court will."

We conclude that the trial court properly ruled on the admissibility of the testimony of witness Liikala concerning the in-court identification of the defendant.

We point out that defendant failed to make a motion to suppress the testimony before trial and also failed to raise any *Wade* objections to the testimony during trial. It is evident that defendant knew he had been in a pretrial lineup and that he did not have counsel present. We rule that defendant has not preserved his right to appeal on this ground, *People* v. *Childers, supra,* and further that under the facts in this case no reversible error occurred because the people have established by clear and convincing evidence that the in-court identifications were based upon observations of the defendant other than the pretrial lineup identifications. *People* v. *Childers, supra; People* v. *Hutton, supra.*

## II.

Did the trial court err in ruling that the prosecutor exercised due diligence in attempting to produce at trial a *res gestae* witness who was indorsed on the information?

The rule of law as to production of *res gestae* witnesses indorsed on the information is stated in the case of *People* v. *Zabijak* (1938), 285 Mich 164, 171, 172 as follows:

"Due diligence must be shown by the prosecutor to produce witnesses whose names are indorsed on the information, and where they are material witnesses, it is the duty of the prosecutor to have sub-

poenas issued, and use other means at hand to have the witnesses present at the trial. *People* v. *Van-Vorce* (1927), 240 Mich 75."

Also see, *People* v. *Moore* (1943), 306 Mich 29; *People* v. *Kern* (1967), 6 Mich App 406.

The Supreme Court of the United States ruled in the case of *Barber* v. *Page* (1968), 390 US 719, 724, 725 (88 S Ct 1318, 1322, 20 L Ed 2d 255, 260) that "a witness is not 'unavailable' for purposes of the foregoing exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial."

This Court in the case of *People* v. *Boyles* (1968), 11 Mich App 417, 422, 423, ruled that:

"The sufficiency of the showing of the prosecution's effort to establish the unavailability of a witness is a question for the trial judge and will not be disturbed in the absence of a showing of an abuse of discretion.

\* \* \*

"Further, under the standard of the *Dusterwinkle Case, supra,* [(1966), 3 Mich App 150] the defendant has the burden of showing an abuse of discretion by the trial judge."

In the instant case, the prosecuting attorney, after the jury was excused for a few minutes, offered "to call any of the remaining witnesses indorsed on the information." The defendant's counsel requested that indorsed witnesses Michael McGaughy, Alexander Garner, and Detective Kostka be called to the stand. The prosecuting attorney then informed the trial court that Alexander Garner was *not* available to testify. The trial court then indicated that the prosecutor would have to show that "due diligence" was exercised in attempting to produce witness Garner for trial. A separate hearing—out of the

presence of the jury—was then held in order for the trial court to determine whether or not "due diligence" was, in fact, exercised.

For the purpose of showing such "due diligence", the prosecuting attorney called Flint City Police Detective Michael Kostka to the stand. Detective Kostka, who was the officer in charge of the case, testified as follows:

"*Q.* Are you aware that one of the witnesses indorsed on the information in this case is a person by the name of Alexander Garner?

"*A.* I am.

"*Q.* Did you in connection with the preparing of this case for trial, did you receive from the prosecutor's office a subpoena directing Alexander Garner to appear at the trial of this cause?

"*A.* I did.

"*Q.* And did you serve that subpoena upon Alexander Garner?

"*A.* Yes, sir, I did.

"*Q.* Have you seen Alexander Garner appear in this courtroom in response to that subpoena?

"*A.* No, I had not.

"*Q.* Now since last Friday when the court directed you to make inquiry as to the whereabouts of this witness and to attempt to attain him if possible, have you done anything in that regard?

"*A.* I have.

"*Q.* What have you done?

"*A.* On Friday, the 26th of June, Saturday, the 27th, Monday, the 29th, and again this morning, I checked at all the Flint hospitals to see if Mr. Garner was a patient at either of the hospitals and he was not. I checked at the city and the county jail each of these days, Friday, Saturday, Monday and this morning, and he is not an inmate. I checked with the Flint Retail Credit Bureau on the 29th, that was Saturday, and they advised me that Mr. Garner

is an employee of Buick Number 70. I called Buick Plant Protection and they informed me that Mr. Garner was laid off for model change. I went to his residence at 804 East Fifth Avenue each of these days, Friday, Saturday and this morning. I had a cruiser go there to check for Mr. Garner. I left a card on his door. I checked with his neighbors at 809 East Fifth Avenue; that's Mr. Perkins and his wife, Easterlee Arrington, A-r-r-i-n-g-t-o-n, and they advised me that they were watching Mr. Garner's house and collecting the newspapers and the mail from his porch because Mr. Garner had left with his family on June 18 for approximately a three-week vacation in Jackson and Newton, Mississippi.

"*Q.* And did any of these visits by you or by the police cruiser to the Garner residence either lead to finding Mr. Garner there or anyone who had any knowledge, other than the one you have already described about believing him to be out of state?

"*A.* There is another apartment in front of that building and I talked to two or three young men there that advised me that the Garners were out of state in Mississippi, they believed, but that I should check with the Arringtons across the street and that's where I got that information.

"*Q.* But beyond that you found no—well, you have at no time found Mr. Garner?

"*A.* No, sir, I have not."

On cross-examination, the defendant's counsel asked Detective Kostka only one question: "What day was he [Mr. Garner] originally served?" After Detective Kostka answered this question, the defendant's counsel said: "I have no further questions". The prosecutor then moved that "the people be excused from producing Alexander Garner". The trial court then asked defendant's counsel if he wished "to argue the issue" and he replied, "No, your Honor". The trial court then ruled that "the court will excuse

the prosecution from calling Alexander Garner on the basis of the showing made".

The defendant did not request an adjournment to await the return of the *res gestae* witness nor did he object to proceeding without the witness. Defendant also failed to indicate that witness Garner could offer relevant or significant testimony if he were present to testify. It appears to us that it would have been futile to attempt to locate the witness in the State of Mississippi. All the officer had to go on was the information that his family was supposed to be on a three-week vacation trip including a visit to Newton or Jackson, Mississippi.

We conclude that the trial court properly excused the prosecution from producing witness Alexander Garner.

## III.

Did the trial court err in denying the defendant's motion to dismiss the case on the ground that the defendant had been illegally arrested?

The defendant asserts that a person cannot be legally arrested solely upon the basis of information received from a confidential informant. On cross-examination by defense counsel, Detective Kostka testified as follows:

"*Q.* Now what did he say that led you to Mr. Hairston?

"*A.* I didn't say.

"*Q.* The arrest, I mean, Mr. Hairston. Why was he arrested?

"*A.* A confidential informer advised me that Jefferson 'June Bug' Hairston was the number 2 man in the armed robbery of Ray's Pharmacy.

"*Q.* And then what did you do?

"*A.* I advised the patrol officers to attempt to locate Jefferson Hairston for one as a suspect in the

robbery. I went to his home on Leith Street and attempted to contact him there and finally, on Thursday, December 18, Jefferson Hairston called the Detective Bureau, the Flint Police Department, and talked to a different detective and asked if he'd been out inquiring about him, Gillespie—Hairston, and the detective said, no, that he wasn't, but he would ask if anyone else was. And he asked and I replied that I was looking for him in connection with this robbery.

"Mr. Hairston stated over the telephone that he was home. I sent two officers out to his house and they picked him up at his home and brought him to the police station where I interviewed him and set up the lineup.

"*Q.* Now was he regarded as being under arrest at this point?

"*A.* Yes.

"*Q.* He was?

"*A.* (Nodding).

"*Q.* Did you have a warrant?

"*A.* No."

In 1 Gillespie, Michigan Criminal Law & Procedure (2d ed), Arrests, § 225, p 254, it is stated:

"That a defendant's arrest was without a warrant or was illegal, cannot be considered at the trial, where it was followed by a complaint and warrant on which the defendant was held for trial, *or, where the respondent was regularly bound over to the circuit court for trial.* Even though an arrest is irregular, the respondent is not thereby given the right to say that he shall not be tried at all." (Emphasis supplied.)

See also, *People* v. *Nawrocki* (1967), 6 Mich App 46; *People* v. *Miller* (1926), 235 Mich 340; and *People* v. *Payment* (1896), 109 Mich 553.

The trial court did not commit reversible error in this regard.

Affirmed.

All concurred.