UNITED STATES of America
v.
John L. TRIVETTE, Jr.
Cr. No. 801–67.

United States District Court
District of Columbia.
May 20, 1968.

William L. Davis, Asst. U. S. Atty., for the United States.

Jean Dwyer, Washington, D. C., for John L. Trivette, Jr.

## MEMORANDUM AND ORDER

YOUNGDAHL, Senior District Judge.

On May 9, 1968, John L. Trivette, Jr., was before this Court for trial on a two-count indictment charging robbery and assault with a dangerous weapon. As a preliminary matter, the defendant moved to suppress the proffered in-court identification of defendant by the complaining witness, Mrs. Cecilia I. Johnson. A hearing was held on this motion out of the presence of the jury.

At about 10:15 A.M. on Thursday, March 9, 1967, it is alleged that a white male approached Mrs. Cecilia I. Johnson at her place of work at the Mayflower Coffee Shop located in the basement of the Statler-Hilton Hotel at 1001 16th Street, N. W., in the District of Columbia. It is alleged that the white male, wearing a hat and top coat, displayed two white paper bags, one which contained a gun, and asked that Mrs. Johnson hand over the money in the register. She placed $297.00 in bills in the bag and the robber fled.

At about 10:45 A.M. the police arrived and Mrs. Johnson described the robber as 6 feet tall and about 35 years old with dark eyebrows.[1] Mrs. Johnson was then asked to come to the station to view some photographs. At the time she was described as quite nervous over the incident. The witness was seated between Detective Harris and Sergeant Vaccaro and was shown numerous photographs or slides projected on a screen. Mrs. Johnson testified that when the color picture of the defendant was flashed on the screen she "shrank" and Detective Harris immediately said, "Is that the man?" She said it was. Detective Harris then told the witness that a black and white picture she had passed over earlier was an old picture of the same person she had

---

1. The defendant is 5'8" tall, 39 years old, and has light eyebrows.

just identified. Detective Harris also told her that the man she had identified was the same man her co-worker at the Mayflower had identified in connection with another armed robbery of the Coffee Shop that had occurred just prior to this one. At the time of this identification the defendant was out on bond charged with the other armed robbery of the Mayflower Coffee Shop. It is clear to the Court that the two officers considered defendant a prime suspect for the robbery and that both the black and white and the colored slide of the defendant were therefore included among those that the witness viewed.

Based on this information a warrant was issued for defendant's arrest. Defendant was arrested at about 11:15 A.M. on March 11. Mrs. Johnson testified that on March 12 she was asked by Sergeant Vaccaro to come to the station to view a line-up. She testified that she was seated in the ante-room to the robbery squad room by Sergeant Vaccaro. Sergeant Vaccaro denied this and testified that he was surprised to see Mrs. Johnson in the ante-room. The Court accepted Mrs. Johnson's version of the facts. According to Mrs. Johnson Sergeant Vaccaro then, without speaking, walked through the ante-room with the defendant in custody. Ten to fifteen minutes later Sergeant Vaccaro came back and asked her "Did you see anyone who looked familiar?" The witness then said that the man who had come in with the Sergeant fifteen minutes earlier was the robber.

Defendant argues that the circumstances surrounding both the photograph identification on March 9 and the one man "show-up" on March 12 resulted in a deprivation of due process. Stovall v. Denno [2] confirmed the proposition that a confrontation with a view to identifying a suspect may be "so unnecessarily suggestive and conducive to irreparable mistaken identification that he [is] denied due process of law."[3]

In United States v. Wade [4] the Supreme Court pointed out that "the vice of suggestion created by the identification in *Stovall* * * * was the presentation to the witness of the suspect alone handcuffed to police officers" and observed that "[i]t is hard to imagine a situation more clearly conveying the suggestion to the witness that the one presented is believed guilty by the police." [5] Our Court of Appeals has also declared that "the presentation of only one suspect, in the custody of the police, raises problems of suggestability that bring us to the threshhold of an issue of fairness." [6]

Mrs. Johnson testified that on March 12 she was seated by Sergeant Vaccaro in the ante-room to the robbery squad room. Sergeant Vaccaro then walked through the room with the defendant in custody. He then came back into the room and asked her if she saw anyone who looked familiar. This is exactly the one-man in custody "show-up" that has been held to deprive a suspect of due process of law. Defendant was on bond in a previous case and was picked up on an arrest warrant in this case—there was no reason not to hold a full line-up under these circumstances. Moreover, because of certain statements that were made at the previous photograph identification there would be substantial doubt as to the validity of the identification process even if a full line-up with counsel were held at this juncture. Therefore this Court finds that the "show-up" on March 12 deprived the defendant of due process of law and that any in-court identification based on the "show-up" must be supressed.

2. 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

3. Id. at 302, 87 S.Ct. at 1972.

4. 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

5. Id. at 234, 87 S.Ct. at 1936.

6. Wright v. United States, U.S.App.D.C., (No. 20153, decided Jan. 31, 1968) ; Wise v. United States, 127 U.S.App.D.C. 279, 383 F.2d 206, 209 (1967).

This, however, does not dispose of the whole issue. The Government has the opportunity of establishing by clear and convincing evidence that the proffered in-court identification of the defendant by the witness had an origin independent of the witness' observation during the March 12 "show-up." [7]

This puts in issue the March 9 photograph identification. In the recent case of Simmons v. United States the Supreme Court pointed out that the procedure of identification from photographs "has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs." [8] The Supreme Court in Simmons went on to hold that photographic identifications should be suppressed only "if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." [9]

■ In this case Mrs. Johnson saw color photographs from a slide projector which were viewed on a screen before her. The slides were roughly categorized by age, height and race, and there were generally eight slides to a reel. During the hearing this Court viewed the reel in which the witness identified the defendant's picture. Because slides are sometimes changed in the reels it was estimated that about 80% of the slides viewed by the Court were viewed by Mrs. Johnson on March 9, 1967. She saw two reels before identifying the defendant in the third reel. It should be noted that the pictures were of good quality and the lighting and other technical aspects of the photographs were excellent. Moreover, the possibility of viewing this number of people that were approximately the same height, weight and race as the defendant would not be feasible in a line-up. Therefore this Court feels that this is both an effective and a fair police technique. Ideally, once the suspect is initially identified by picture he should later be displayed in a physical line-up, thus permitting the photographic identification to be supplemented by a corporeal identification which adds another significant dimension.

■ However, this Court feels that other aspects of the photograph viewing were "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." [10] When the defendant's picture was flashed on the screen it was Detective Harris who spoke first asking "Is that the man?" Then after Mrs. Johnson said it was, Detective Harris immediately told her that her co-worker Mrs. Willis had recently identified defendant in a similar robbery of the same coffee shop for which the defendant was then out on bond. Furthermore, there were substantial discrepancies between the testimony of the police officer who testified [11] and Mrs. Johnson as to exactly what went on at this and at the subsequent identification. Moreover, there were indications that the police felt defendant was the robber and the evidence convinces this Court that in their overzealousness to secure a strong identification this thought was unwittingly communicated to the complaining witness. Because of this, any in-court identification

---

7. See Wright v. United States, U.S.App. D.C., (No. 20153, decided January 31, 1968).

8. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (No. 55 decided March 18, 1968).

9. Id. 390 U.S. at p. 384, 88 S.Ct. 971 at p. 384.

10. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (No. 55 decided March 18, 1968).

11. Detective Harris is no longer with the police force and did not testify at the hearing before this Court.

based on the identification of March 9 must be suppressed.[12]

█ This Court must now resolve the issue of whether the proffered in-court identification can rest solely on the observations of the witness during the commission of the offense itself. Mrs. Johnson did have an opportunity to observe the robber during the time she was giving him the money. He was wearing a hat, but was unmasked. The witness was understandably upset and frightened during the robbery. Nevertheless, it might have been possible for Mrs. Johnson to make a positive identification at that time.[13] The Court asked the witness if, without considering either the photograph identification or the one-man "show-up" of March 12, she would still be able today to identify the defendant as the man who robbed her Mrs. Johnson, after much hesitation finally said, "I think so." After further prompting by the Court, which indicated that this answer was uncertain and speculative, she finally said she could identify him. The unsureness of the initial response, coupled with whatever effect the subsequent improper identification must have had on the witness, makes it impossible for this Court to uphold an in-court identification based on the witness' observations during the robbery.

The initial decision as to the reliability of the identification procedure is within the discretion of the trial court which has the unique opportunity to get the "feel" of the case and to evaluate the witnesses. And, in the final analysis, this Court could not in good conscience send these identifications to the jury.

For the foregoing reasons, it is ordered that the motion to suppress the two identifications by Mrs. Cecilia Johnson on March 9 and the identification on March 12 should be and is hereby granted.

12. The case of James W. Kelly and Joseph Isaac v. United States of America, U.S. App.D.C., F.2d (No. 20533 and 20544 decided on March 11, 1968), invoved a photograph identification in this jurisdiction. For some reason it was instructed that this opinion was not to be reported. In this case two witnesses were shown pictures of the defendant Isaac who they identified from among pictures of several men. They then separately viewed a color slide of Isaac and again identified him. An identification at a one-man physical line-up then followed. The Court stated that although the practice of showing suspects singly for purposes of identification is viewed with increasing suspicion by the Supreme Court, the facts of this case justified affirming the conviction. The basis for the decision seems to have been the trial judge's explicit findings, after an exhaustive hearing, that these really were true identifications and that there was no substantial likelihood of irreparable misidentification. Upon the evidence presented this Court cannot make such findings in the case now before it.

13. This Court's standard charge on identification includes the following: Because there is a possibility of error in identifying one accused of crime, the law is that if the circumstances of the identification are not convincing the jury should find the defendant not guilty. The Government must prove beyond a reasonable doubt that the defendant is the person who participated in the alleged crime.
In this connection you should consider the length of time the witness had the person he now identifies under observation. You should also consider the circumstances under which the observation was made, including the confusion of the moment, the possible likeness or similarity of people, the possibility of faulty memory after the passage of time before the identification was made, and any other factors which seem to you to be important.