PEOPLE *v.* HUTTON

1. CONSTITUTIONAL LAW—CRIMINAL LAW—RIGHT TO COUNSEL—PRETRIAL LINEUPS—IDENTIFICATION.

   The Sixth Amendment guarantees to an accused the right to counsel at pretrial lineups conducted for identification purposes (US Const, Am 6).

2. CRIMINAL LAW—CONSTITUTIONAL LAW—IDENTIFICATION LINEUP—RIGHT TO COUNSEL.

   A compelled confrontation between an accused, who has not yet been indicted, and the victim of, or witnesses to, a crime to elicit identification evidence is a critical stage of the prosecution at which an accused is constitutionally entitled to counsel because such a confrontation, with its innumerable dangers and variable factors, might seriously, even crucially, derogate from a fair trial (US Const, Am 6).

---

REFERENCES FOR POINTS IN HEADNOTES

[1–3, 5–7] 21 Am Jur 2d, Criminal Law §§ 313, 314.
   Admissibility of evidence as to extrajudicial or pretrial identification of accused.   71 ALR2d 449.
[4, 8–10] 21 Am Jur 2d, Criminal Law § 333 *et seq.*
[11, 12] 21 Am Jur 2d, Criminal Law §§ 440, 441.
[13–19] 29 Am Jur 2d, Evidence § 367 *et seq.*

3. CRIMINAL LAW—CONSTITUTIONAL LAW—RIGHT TO COUNSEL—IDEN-
   TIFICATION—ONE-WAY MIRROR.
   Confrontation of defendant by a *res gestae* witness through a
      police station one-way mirror was a critical stage of the
      prosecution at which defendant was constitutionally entitled
      to counsel, notwithstanding the absence of a formal indict-
      ment.

4. CRIMINAL LAW—IDENTIFICATION—CONFRONTATION—ONE-WAY MIR-
   ROR—REASONABLENESS.
   Identification of a suspect by a witness through a one-way mirror
      is not an in-the-field identification and is not therefore a rea-
      sonable confrontation of that suspect in the course of, or im-
      mediately following, a criminal episode.

5. CRIMINAL LAW — IDENTIFICATION — CONFRONTATION — REASON-
   ABLENESS — RIGHT TO COUNSEL.
   The dividing line between a reasonable confrontation, notwith-
      standing the absence of counsel, and an unreasonable con-
      frontation which requires the presence of an attorney, is
      whether an investigation has ceased to be a general investiga-
      tion of an unsolved crime and a suspect has become the accused.

6. CRIMINAL LAW — IDENTIFICATION — CONFRONTATION — ACCUSED —
   RIGHT TO COUNSEL.
   Once a person has been arrested, informed of his constitutional
      rights, taken into custody, and booked for a specific crime,
      that person has become an accused and he is entitled to counsel
      during any identification-confrontation, since such a confronta-
      tion is for the purpose of building a case against the arrestee,
      not to extinguish a case against an innocent bystander.

7. CRIMINAL LAW — IDENTIFICATION — CONFRONTATION — ACCUSED —
   RIGHT TO COUNSEL.
   Defendant's constitutional right to the presence of counsel had
      already attached at the time that a police station identification-
      confrontation was held, even though he had not yet been in-
      dicted, where the identifying witness viewed defendant through
      a one-way mirror by police design, rather than by happen-
      stance, and a significant amount of time had elapsed since that
      witness had seen the breaking and entering of a building with
      which defendant was charged.

8. CRIMINAL LAW—EVIDENCE—ILLEGAL CONFRONTATION—WITNESSES
   —TESTIMONY—ADMISSIBILITY.
   All prosecution testimony of identifications made at an illegal
      confrontation is *per se* inadmissible, consequently, permitting a

witness to testify to his identification of defendant during an illegal confrontation was error.

9. Criminal Law—Evidence—Illegal Confrontation—Claim—Evidentiary Hearing.

Once a claim of an illegal confrontation is raised, an evidentiary hearing should be held outside the presence of the jury to determine the merits of that claim.

10. Criminal Law—Evidence—Illegal Confrontation—In-Court Identification—Admissibility.

An in-court identification of a defendant may still be made after an illegal confrontation but only if the prosecution, outside the jury's presence, is first able to establish by clear and convincing evidence that the in-court identification is based upon sources independent of the illegal confrontation.

11. Criminal Law—In-Court Identification—Independent Source —Evidentiary Hearing—Question of Law.

A preliminary hearing should be held to resolve the issue of whether there is an independent source for an in-court identification of a defendant and whether there is an independent source is a question for the court even though that question involves issues of fact.

12. Criminal Law—Evidence—In-Court Identification—Admissibility—Weight—Credibility—Jury.

Once a trial court determines in a separate hearing that an in-court identification is admissible, the jury should then be limited to determining the truthfulness of that identification *i.e.*, the weight and credibility of any testimony identifying defendant as the perpetrator of a crime.

13. Criminal Law—Evidence—In-Court Identification—Admissibility—Factors.

Factors determining the admissibility of a witness' in-court identification of a defendant are: prior opportunity to observe the criminal act, the existence of any discrepancy between any pretrial description and the actual appearance of defendant, any identification of another person before confrontation, photographic identification before confrontation, failure to identify defendant on a prior occasion, the lapse of time between the crime and the confrontation for identification purposes, any uncertainty in the identifying witness' response as to whether he could identify defendant at trial had he not seen him at the deficient pretrial confrontation, and all other evi-

dence which supports, or undermines, the assertion of an in-court identification purged of the primary taint of an illegal identification-confrontation.

14. CRIMINAL LAW—EVIDENCE—IN-COURT IDENTIFICATION—ADMISSIBILITY—PRESERVING RECORD.

A determination that an in-court identification of defendant is based on sources independent of an illegal confrontation, should also include for the record what evidence justifies admission of that in-court identification in order that an appellate court may be in a better position to review alleged errors in the admission of such identifications.

15. CRIMINAL LAW — EVIDENCE — IN-COURT IDENTIFICATION — CHALLENGE — APPEAL AND ERROR.

A challenge to the admission of an in-court identification requires an appellate court to reach one of three conclusions: affirm, if it appears from the record by clear and convincing evidence that the challenged in-court identification was not tainted by the prior identification of defendant, or if the evidence shows beyond a reasonable doubt that admission of that prior identification was harmless; reverse, if it can be determined from the record that the in-court identification was tainted and that it does not appear harmless beyond a reasonable doubt; remand for an evidentiary hearing if the record does not permit an informed judgment that the challenged in-court identification had an independent source, or was harmless beyond a reasonable doubt; and, in reaching its conclusion, an appellate court will independently scrutinize the record, giving customary weight to the trial court findings.

16. CRIMINAL LAW—EVIDENCE—ILLEGAL CONFRONTATION—ADMISSION—HARMLESSNESS—DETERMINATION—APPEAL AND ERROR.

An appellate court must determine whether the erroneous admission of identifications made at an illegal confrontation constitutes harmless error.

17. CRIMINAL LAW—EVIDENCE—IN-COURT IDENTIFICATION—ADMISSIBILITY.

An in-court identification of defendant as a participant in a breaking and entering was erroneously admitted where the identifying witness had a limited opportunity to observe the perpetrators, he did not see defendant's face, there being nothing particularly outstanding in defendant's size or build which would permit an identification notwithstanding the witness' failure to observe defendant's face, he failed to identify defendant from three suspects at a pretrial illegal confronta-

tion, he identified defendant only by his white T-shirt and hair color, and he admitted that he did not think he could have identified defendant at trial had he not seen him at the illegal confrontation.

18. CRIMINAL LAW—EVIDENCE—IN-COURT IDENTIFICATION—ADMISSI-BILITY—HARMLESSNESS.

An in-court identification of defendant, tainted by a prior illegal confrontation, was not harmless beyond a reasonable doubt, even though circumstantial evidence connecting defendant with the crime charged was substantial, where the only direct evidence placing defendant at the scene of the crime was a witness' testimony that he identified defendant at the police station and that he recognized defendant at trial.

19. CRIMINAL LAW—EVIDENCE—TAINTED IDENTIFICATION—INSTRUCTIONS TO JURY.

An illegal confrontation-identification which is not harmless beyond a reasonable doubt requires a reversal of a defendant's conviction even though the trial court instructed the jury to disregard the confrontation-identification since the risk that the jury will not, or cannot, follow instructions is so great under certain circumstances, and the consequences of their failure to follow instructions so vital to a defendant, that the practical and human limitations of the jury system cannot be ignored.

Appeal from Macomb, Frank E. Jeannette, J. Submitted Division 2 November 4, 1969, at Lansing. (Docket No. 5,253.) Decided February 3, 1970. Rehearing denied March 17, 1970. Leave to appeal denied June 23, 1970. 383 Mich 796.

William Thomas Hutton was convicted by a jury of breaking and entering. Defendant appeals. Reversed and remanded for new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *George N. Parris,* Prosecuting Attorney, *Thaddeus F. Hamera,* Chief Appellate Lawyer, and *Steven F. Osinski,* Assistant Prosecuting Attorney, for the people.

*Nicoletti & McCullough,* for defendant on appeal.

Before: J. H. Gillis, P. J., and McGregor and V. J. Brennan, JJ.

J. H. Gillis, P. J. Defendant was convicted by a jury of breaking and entering in violation of MCLA § 750.110 (Stat Ann 1969 Cum Supp § 28.305). His motion for new trial was denied and he appeals. The principal question presented concerns application of the principles enunciated in the identification trilogy, *United States* v. *Wade* (1967), 388 US 218 (87 S Ct 1926, 18 L Ed 2d 1149); *Gilbert* v. *California* (1967), 388 US 263 (87 S Ct 1951, 18 L Ed 2d 1178), and *Stovall* v. *Denno* (1967), 388 US 293 (87 S Ct 1967, 18 L Ed 2d 1199). We have concluded that defendant's conviction must be reversed for error in the admission of evidence identifying defendant as a participant in the crime.

## The Facts

On the morning of August 15, 1967, at approximately 4:15 a.m., Dale Kuecken returned home from work. From his apartment window, he observed a car parked in front of a laundromat across the street. Several individuals were scurrying about the building, one of whom was wearing a white T-shirt. Kuecken heard a voice say, "We can't get in," and he saw someone trying to pry open the door. He called the police. Kuecken then heard glass breaking and an alarm ringing, and he saw two persons running toward his side of the street. Kuecken took his shotgun and went outside to stop them. He confronted one individual and ordered him to stop. At the same time, Kuecken observed the second individual running to his left. This second man was wearing a white T-shirt and had sandy, blond hair. Thereafter, Kuecken was struck by a tire iron thrown by the first person who then fled.

The police arrived and Kuecken directed their at-

tention to a car that was driving away from the
scene. The police pursued this car, overtook it, and
apprehended defendant and two others. When ap-
prehended by the police, defendant was wearing a
white T-shirt. The police took the three men to the
police station where, approximately an hour after
the breaking and entering, they were viewed by
Kuecken through a one-way glass panel. At the
station, where Kuecken had been brought by the po-
lice for the purpose of identifying the suspects,
Kuecken identified Gerald Love as the man who had
thrown the tire iron. Also, according to his testi-
mony at trial, Kuecken identified defendant Hutton
as the man he had seen running to his left.

Defendant and Love were tried together. At trial,
Kuecken was asked by the prosecution to make an
in-court identification of Love. Counsel for defend-
ants objected and moved for a special record. The
defense offered to show that the confrontation at
the police station was held in the absence of counsel.
It was claimed that the absence of counsel violated
defendants' constitutional rights; that testimony of
any identifications made at the confrontation could
not be admitted; and that a separate record was
required in order to determine whether Kuecken
could identify either Love or defendant independent-
ly of the allegedly illegal confrontation.

The trial court commenced a special record but
refused defense counsel's request to continue this
record to the point of determining whether the con-
frontation was illegal and whether in-court identi-
fications of either Love or defendant had sources
independent of the police station confrontation.
The trial judge was apparently of the view that the
issue of independent source was a matter of credi-
bility for the jury. Thereafter, the jury was re-
called and on direct examination Kuecken's testi-

mony implied that he recognized defendant Hutton
as the man he had seen running to his left at the
scene of the crime. Kuecken also testified that he
had identified defendant at the police station. De-
fense counsel objected to this latter testimony on
the ground that it had not been shown whether the
confrontation was constitutionally held.

The prosecution then called the police officers who
had apprehended the fleeing car and taken defend-
ant into custody. The officers related the details
of the police station confrontation. The testimony
of the officers tended to show that the suspects had
been advised of their right to counsel; that they had
asked to call an attorney; but that no attorney was
present at the confrontation. At the close of the
prosecution's case, defense counsel moved that all
testimony of identifications made at the confronta-
tion be stricken. On special record, the trial court
inquired of Hutton:

> *"The Court:* Did you ask for an attorney?
> *"The Witness:* Yes, sir.
> *"The Court:* When did you ask for an attorney?
> *"The Witness:* At the time we were picked.
> *"The Court:* Now, were you told that there was
> going to be a lineup or show up?
> *"The Witness:* No sir, we weren't."

The court then ruled that the confrontation at the
police station was in violation of defendants' rights.
The jury was instructed to disregard the identi-
fications made at the police station.

Defense counsel also moved that Kuecken's in-
court identification of Hutton be stricken on the
ground that the prosecution had failed to show
that Kuecken could identify Hutton independently
of the illegal confrontation. Counsel noted: "Here
we have the identification of Mr. Hutton, at the
closest, I believe 30 feet, running." The court

responded: "But isn't that a question of credibility for the jury?" The motion to strike was denied.

## Application of the Wade, Gilbert, and Stovall Trilogy

On appeal, defendant contends that the trial court erred in denying his motion to strike Kuecken's in-court identification, since the prosecution failed to establish by clear and convincing evidence that Kuecken's in-court identification was based on observations of Hutton other than those obtained at the police station confrontation. Defendant relies upon *United States* v. *Wade, supra,* and the exclusionary rules there adopted. See 388 US at p 240 (87 S Ct at p 1939, 18 L Ed 2d at p 1164). The people contend that the principles enunciated in *Wade* and companion cases are inapplicable to the facts of this case. It is argued that Hutton was not entitled to counsel at the police station confrontation and that, therefore, the exclusionary rules do not apply.

In *United States* v. *Wade, supra,* it was held that the Sixth Amendment guarantees to an accused the right to counsel at pretrial lineups conducted for identification purposes. In the present case it is clear that at the time defendant was identified at the police station he did not have the assistance of counsel. We must therefore consider whether defendant's right to counsel had attached at the time he was identified.

The precise holdings of *Wade* and *Gilbert* apply only to post-indictment lineups conducted for purposes of identification. The people seek to distinguish the present case on the ground that no indictment had been filed against Hutton. In light of the rationale of *Wade,* we cannot agree with this contention. In *Wade,* the Court noted that a com-

pelled confrontation between the accused and the victim or witnesses to a crime to elicit identification evidence is "riddled with innumerable dangers and variable factors which might seriously, even crucially, derogate from a fair trial." 388 US at p 228 (87 S Ct at p 1933, 18 L Ed 2d at p 1158). Accordingly, it was held that such confrontations constitute a critical stage of the prosecution at which an accused is entitled to counsel. These same dangers were present when Hutton was viewed by Kuecken through the one-way mirror, and we think it clear that counsel's presence was required, notwithstanding the absence of a formal indictment. See *People* v. *Childers* (1969), 20 Mich App 639; *People* v. *Fowler* (1969), 270 Cal App 717 (76 Cal Rptr 1); *People* v. *Martin* (1969), 273 Cal App 724 (78 Cal Rptr 552); *Palmer* v. *State of Maryland* (1969), 5 Md App 691 (249 A2d 482). In this regard, we note that in *Wade* the Court specifically questioned the practice of using one-way mirrors for identification purposes. See *United States* v. *Wade, supra,* note 13 at p 230 (87 S Ct at p 1934, 18 L Ed 2d at p 1159). Moreover, many passages of the *Wade, Gilbert,* and *Stovall* opinions indicate that the Court did not intend to limit their effect to post-indictment lineups.[1]

The people also contend that the action of the police in this case constituted an in-the-field identification, one wholly different from the confrontations in *Wade* and *Gilbert*. The people rely on

---

[1] "In sum, the principle of *Powell* v. *Alabama* and succeeding cases requires that we scrutinize *any* pretrial confrontation of the accused to determine whether the presence of his counsel is necessary to preserve the defendant's basic right to a fair trial as affected by his right meaningfully to cross-examine the witnesses against him and to have effective assistance of counsel at the trial itself." *United States* v. *Wade* (1967), 388 US 218, 227 (87 S Ct 1926, 1932, 18 L Ed 2d 1149, 1157). (Emphasis supplied.) And see *Stovall* v. *Denno* (1967), 388 US 293, 298 (87 S Ct 1967, 1971, 18 L Ed 2d 1199, 1204).

*Commonwealth* v. *Bumpus* (1968), 354 Mass 494
(238 NE2d 343). In *Bumpus,* a suspect was
apprehended by the police within minutes after a
robbery and returned to the victim's apartment for
identification. The court characterized this on-the-
scene identification as a "reasonable confrontation
\* \* \* in the course of (or immediately following)
a criminal episode," 354 Mass at p 501 (238 NE2d
at 347), at which counsel's presence was not re-
quired. *Wade* and *Gilbert* were held inapplicable
in such circumstances. See also *Smith* v. *State of
Maryland* (1969), 6 Md App 23 (249 A2d 732);
*United States* v. *Davis* (CA2, 1968), 399 F2d 948;
*Bates* v. *United States* (1968), 132 App DC 36 (405
F2d 1104); *Russell* v. *United States* (1969), 133 App
DC 77 (408 F2d 1280).

It is evident from a reading of *Bumpus* and its
siblings that courts are not inclined to hold that all
pretrial confrontations require the presence of
counsel.[2] For example, in *United States* v. *Davis,
supra,* p 951, the court observed that it is hard to
believe that in *Wade* the court intended to prevent
a police officer from collaring a man fleeing from the
scene of an assault and from immediately thereafter
asking the victim whether the man was the per-
petrator. See also *Commonwealth* v. *Bumpus,
supra,* at pp 501, 502 (238 NE2d at pp 346, 347).
The problem, then, is fashioning an appropriate
dividing line between those confrontations which
might be characterized as "reasonable," see *Com-
monwealth* v. *Bumpus, supra,* at p 502 (238 NE2d
at p 347), notwithstanding an absence of counsel
and those which require the presence of an attorney.

We are in accord with the views expressed by
Judge Friendly in *United States* v. *Davis, supra,*
at p 952:

---

[2] But see *Rivers* v. *United States* (CA 5, 1968), 400 F2d 935, 939.

"A clue to the dividing line may be furnished by the Court's repeated use of the term 'accused' and its reference in *Wade,* 388 US at p 225 (87 S Ct 1926, 18 L Ed 2d 1149), to *Escobedo* v. *State of Illinois* (1964), 378 US 478 (84 S Ct 1758, 12 L Ed 2d 977). We have particularly in mind the passage in that opinion, 378 US at pp 485, 486 (84 S Ct at p 1762, 12 L Ed 2d 983):

"'[*T*]*he investigation had ceased to be a general investigation of "an unsolved crime"* * * * . Petitioner had become the accused, and the purpose of the interrogation was to "get him" to confess his guilt despite his constitutional right not to do so. * * * It would exalt form over substance to make the right to counsel, under these circumstances, depend on whether at the time of the interrogation, the authorities had secured a formal indictment. Petitioner had, for all practical purposes, already been charged with murder.'" (Emphasis supplied.)

At the time of the confrontation in the present case, we think it clear that Hutton had become the "accused." He had been arrested, informed of his rights, taken into custody, and booked. The purpose of the confrontation at the police station was to build a case against the accused by eliciting identification evidence, not to extinguish a case against an innocent bystander. In this regard, it is significant that in *Bumpus* the court noted that "investigation of the episode was not really over." 354 Mass note 2 at p 500 (238 NE2d note 2 at p 346). On this ground, we think the people's reliance on *Bumpus* is misplaced.

Additional elements of the confrontation in this case lead us to conclude that counsel's presence was required. The confrontation here occurred at the police station at the direct instance of the police. See *People* v. *Martin, supra,* at p 207 (78 Cal Rptr at p 557); *Palmer* v. *State of Maryland, supra,* at

p 698 (249 A2d at p 487). Compare *Bates* v. *United States, supra,* at p 1106 (on-the-spot identification); *Russell* v. *United States, supra,* at p 1284 (identification at scene of the crime). That Kuecken viewed Hutton through the one-way mirror was by design rather than by happenstance. Compare *Smith* v. *State of Maryland, supra,* at p 31 (249 A2d at p 737). Also, a significant amount of time had elapsed since Kuecken witnessed the breaking and entering. It cannot be said that the confrontation occurred "in the course of (or *immediately* following) a criminal episode." *Commonwealth* v. *Bumpus, supra,* at p 501 (238 NE2d at p 347). (Emphasis supplied.) See also *Russell* v. *United States, supra,* note 20 at p 1284. Finally, the record in this case fails to disclose any necessity for an immediate confrontation. See *Rivers* v. *United States* (CA 5, 1968), 400 F2d 935, 940.

In summary, we conclude that the police station identification-confrontation constituted a "critical stage" in the proceedings against Hutton. At the time of the mirror viewing Hutton was the accused; as such, he should not have stood alone against the State. *United States* v. *Wade, supra,* at p 226 (87 S Ct at p 1932, 18 L Ed 2d at p 1157). Defendant had the right to the presence of counsel at the confrontation and this Sixth Amendment right had attached at the time he was viewed by Kuecken.

### The Exclusionary Rules

In *Gilbert* v. *California, supra,* the Supreme Court sought to ensure recognition of the right to counsel at confrontations like that in the present case by adopting certain exclusionary rules. One such rule is that all testimony of identifications made at an illegal confrontation offered on behalf of the prosecution is *per se* inadmissible. 388 US at p 273

(87 S Ct at p 1957, 18 L Ed 2d at p 1186). Since defendant Hutton was not afforded counsel at the police station confrontation, Kuecken's testimony that he identified Hutton at the confrontation was inadmissible at trial. "That testimony [was] the direct result of the illegal lineup 'come at by exploitation of [the primary] illegality.'" *Gilbert* v. *California, supra,* at p 272, 273 (87 S Ct at p 1956, 1957, 18 L Ed 2d at p 1186), quoting *Wong Sun* v. *United States* (1963), 371 US 471, 488 (83 S Ct 407, 417, 9 L Ed 2d 441, 455). The trial court should not have permitted Kuecken to so testify in the presence of the jury. In this regard, defense counsel's request for a separate record in order to determine the legality of the confrontation was well taken. In the future such requests, if timely made, should be honored. Once a claim of an illegal confrontation is raised, an evidentiary hearing should be held to determine the merits of the claim, and this hearing should be held outside the presence of the jury. See *People* v. *Childers, supra.*

Not all testimony identifying a defendant as the perpetrator of a crime is rendered inadmissible by the *per se* exclusionary rule fashioned in *Gilbert,* however. An in-court identification may still be made if, but only if, the prosecution is first able to "establish by clear and convincing evidence that the in-court identification [is based] upon observations of the suspect other than the lineup identification." *United States* v. *Wade, supra,* at p 240 (87 S Ct at p 1939, 18 L Ed 2d at p 1164). Again, this showing is one which must be made outside the presence of the jury. A preliminary hearing should be held in order to resolve the issue of independent source, thereby determining the admissibility of any proffered in-court identification. And, contrary to the views of the trial court in this case, the issue

of independent source is, in the first instance, a question for the court, even though that question involves issues of fact. See *Stovall* v. *Denno, supra,* at pp 299, 300 (87 S Ct at p 1973, 18 L Ed 2d at p 1205). Once the trial court determines that an in-court identification is admissible, the jury should then be limited to determining the truthfulness, *i.e.,* weight and credibility, of any testimony identifying defendant as the perpetrator. *Cf. People* v. *Walker (On Rehearing,* 1965), 374 Mich 331, 338.

In determining whether a witness' in-court identification is admissible, the trial court is to apply the test quoted in *Wong Sun* v. *United States, supra,* at p 488 (83 S Ct at p 417, 9 L Ed 2d at p 455):

" '[W]hether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' "

*United States* v. *Wade, supra,* at p 241 (87 S Ct at p 1939, 18 L Ed 2d at p 1165). And among the factors to be considered in applying this test are: the witness' prior opportunity to observe the alleged criminal act; the existence of any discrepancy between any pretrial description and the defendant's actual appearance; any identification of another person before confrontation; photogenic identification before confrontation; failure to identify the defendant on a prior occasion; and the lapse of time between the alleged act and the confrontation identification. *United States* v. *Wade, supra,* at p 241 (87 S Ct at p 1939, 18 L Ed 2d at p 1165). No doubt, the witness will be asked whether he could identify the defendant at trial had he not seen him at the deficient pretrial confrontation. Any uncertainty in the witness' response is also, we think, a relevant factor. See *United States* v. *Trivette* (D DC, 1968),

284 F Supp 720, 724; *Clemons* v. *United States*
(1968), 133 App DC 27 (408 F2d 1230, 1242). The
trial court should thus consider the witness' own
testimony and all other evidence which supports, or
undermines, the assertion of an identification
"purged of the primary taint." If the court deter-
mines that an identification at trial is capable of
standing on its own, we think it advisable for the
court to state on the record what evidence it believes
justifies admission of the in-court identification. An
appellate court is then in a better position to review
alleged errors in the admission of such identifica-
tions.

Where, as in this case, the admission of an in-
court identification is challenged, meaningful ap-
pellate review requires that the reviewing court
reach one of the following conclusions. If it ap-
pears from the record by clear and convincing evi-
dence that the in-court identification was not tainted
by the prior identification or if the evidence shows
beyond a reasonable doubt that admission of that
identification was harmless, and there is otherwise
no error, the conviction will be affirmed. See *People*
v. *Love* (1969), 18 Mich App 228; *People* v. *Wilson*
(1969), 20 Mich App 410; *People* v. *Childers, supra;*
*People* v. *Bratton* (1969), 20 Mich App 523; *People*
v. *Nugent* (1969), 21 Mich App 58; *People* v.
*Martin, supra.* If it can be determined from the
record that the in-court identification was tainted
and that it does not appear harmless beyond a rea-
sonable doubt, the conviction will be reversed. See
*People* v. *Menchaca* (1968), 264 Cal App 2d 642 (70
Cal Rptr 843); *People* v. *Colabella* (1969), 31 App
Div 2d 827 (298 NYS2d 40); *People* v. *Hill* (1969)
32 App Div 2d 966 (303 NYS2d 14); *Mason* v. *United
States* (1969), 134 App DC 280 (414 F2d 1176). If
the record does not permit an informed judgment

that the in-court identification had an independent
source, or was harmless beyond a reasonable doubt,
the case will be remanded for an evidentiary hear-
ing. See *United States* v. *Wade, supra; People* v.
*Ballott* (1967), 20 NY2d 600 (286 NYS2d 1). In
each of the above postures, the reviewing court in
reaching its conclusion will independently scrutinize
the record, giving customary weight to the findings
of the trial court. See *People* v. *Nugent, supra.*

Finally, where, as here, identifications made at an
illegal confrontation are erroneously admitted into
evidence, an appellate court must determine whether
the error was harmless. See *Gilbert* v. *California,
supra; People* v. *Childers, supra.*

In this case, unlike the situation in *Wade,* see 388
US at p 242 (87 S Ct at p 1940, 18 L Ed 2d at p
1166), the issue of independent source was fully
litigated at trial. The record on appeal thus per-
mits this Court to make an informed judgment as
to whether Kuecken's in-court identification of de-
fendant Hutton had an independent origin. Com-
pare *United States* v. *Wade, supra,* at p 242 (87
S Ct at p 1940, 18 L Ed 2d at p 1166); *Gilbert* v.
*California, supra,* at p 272 (87 S Ct at p 1956, 18
L Ed 2d at p 1186).

On direct examination, Kuecken's testimony
implied that he recognized defendant Hutton as
the man he had seen running to his left at the scene
of the crime. We think the following testimony
could reasonably have been so construed by the jury.

"*Q.* Now, do you see the party here that was
wearing the white T-shirt?

"*A.* Yes, sir.

"*Q.* And who is that?

"*A.* Mr. Hutton.

"*Q.* Mr. Hutton. Now, had you ever seen any of these two parties in the courtroom before this incident?

"*A.* No, sir, I hadn't."

On cross-examination, Kuecken testified that he was sure Hutton was the man he had seen running to his left. Further questioning, however, revealed the basis of Kuecken's in-court identification. When asked how he was so sure, Kuecken replied: "I said it before and I probably say it again *that's the fellow they had down at the police station.*" Defense counsel continued:

"*Q.* Right, that's the only reason you know as far as his identification, is that he was at the police station, is that correct?

"*A.* Yes, and that they picked him up in the car and he was one of the fellows that ran across the street.

"*Q.* As far as your identification goes you're sure that Mr. Hutton was in that police station?

"*A.* He was in the police station, yes.

"*Q.* But you are not sure that he was involved in a crime?

"*A.* I am very sure, yes.

"*Q.* How are you so sure?

"*A.* By the description.

"*Q.* In other words, you are basing your sureness on a white T-shirt?

"*A.* Yes.

"*Q.* How long did you see Mr. Hutton?

"*A.* Briefly.

\*      \*      \*

"*Q.* So you saw Mr. Hutton out of the corner of your eye?

"*A.* I looked at him.

"*Q.* And he got as close as thirty feet?

"*A.* I would say.

"*Q.* And you saw him from five to ten seconds?

"*A.* Yes.

"*Q.* And that is what you are basing your identification on?

"*A.* That is the same man I saw across the street."

Again, Kuecken was asked how he was so sure, and he replied: "By the same clothes. *I didn't get a look at his face.*" Defense counsel then asked: "Could you identify Mr. Hutton if you had never seen him between the crime and today?" Kuecken responded: "I don't think so."

We think it clear that the record fails to show "by clear and convincing evidence that the in-court identification [was] based upon observations of the suspect other than the [illegal confrontation] identification." *United States* v. *Wade, supra,* at p 240 (87 S Ct at p 1939, 18 L Ed 2d at p 1164). We reach this conclusion for three reasons. First, Kuecken's opportunity to observe the man wearing a white T-shirt at the scene was limited. Compare *People* v. *Wilson, supra; People* v. *Childers, supra; People* v. *Bratton, supra; People* v. *Nugent, supra.* By his own testimony, Kuecken did not see defendant's face—an admission which on this record undermines the assertion of an identification purged of the primary taint. *Cf. People* v. *Menchaca, supra.* There was nothing particularly outstanding in Hutton's size or build which would permit an identification notwithstanding a failure to observe his face. Although Kuecken testified that the man he saw running to his left wore a white T-shirt and had sandy, blond hair, these observations alone are, we think, insufficient to permit a positive identification. See *People* v. *M* (1969), 32 App Div 2d 732 (302 NYS2d 156).[3]

---

[3] A witness testified at a suppression hearing that her main observation of defendant was of his boots and seeing him from the

Second, the record reveals that Kuecken failed to identify Hutton on an occasion before trial. Compare *People* v. *Childers, supra.* The occasion was the confrontation itself. Although on direct examination Kuecken testified that he pointed to Hutton at the police station, he later testified that he was able to identify Hutton at the confrontation only by his white T-shirt and color of hair—features which alone, we feel, are too sketchy to permit a positive identification. Moreover, Officer Young, who attended the confrontation. testified that Kuecken could only identify Gerald Love, although he was given the opportunity to observe three suspects. Nothing was said about the other two, including Hutton. Under these circumstances,

> "Since we cannot say that the [confrontation] identification most probably rested on an independent basis, we can hardly find 'clear and convincing evidence' of such an independent source for the subsequent in-court identification." *Mason* v. *United States, supra,* at p 1182.

Finally, Kuecken by his own testimony stated that he did not think he could identify Hutton at trial had he not seen him at the illegal confrontation. We hold that this testimony, even if fully credited, was legally insufficient to permit an in-court identification to reach the jury. *Cf. United States* v. *Trivette, supra; Clemons* v. *United States, supra.*

We conclude that it was error for the jury to hear testimony implying that Kuecken recognized Hutton at trial as one of the men he observed at the scene

---

rear. She never saw him face to face. The trial court ruled that her view was too limited and that, as a matter of law, her identification testimony was inadmissible at trial. Despite this exclusionary ruling, the trial judge permitted the witness to identify defendant at trial and found that her identification was positive and definite. The appellate court held it was error to receive and credit such identification testimony.

of the crime. One issue remains. Was the admission of Kuecken's identification testimony harmless error? Unless we are able to declare a belief beyond a reasonable doubt that the erroneous admission of such evidence did not contribute to Hutton's conviction, we must reverse. *Chapman* v. *California* (1967), 386 US 18 (87 S Ct 824, 17 L Ed 2d 705).

At trial, the sole issue left to the jury was the question of identification. The only direct evidence that placed Hutton at the scene of the crime was Kuecken's testimony that he identified Hutton at the police station and that he recognized Hutton at trial. Given the overwhelming importance of the witness' identification of Hutton, we cannot say that Kuecken's identification testimony did not contribute to defendant's conviction. Although the circumstantial evidence connecting defendant with the crime was substantial, still we are unable to declare that the tainted identification testimony was harmless beyond a reasonable doubt. We reverse, notwithstanding the trial court's instruction to the jury to disregard the confrontation identification. The damage had been done and,

"There are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to defendant, that the practical and human limitations of the jury system cannot be ignored."

*Bruton* v. *United States* (1968), 391 US 123, 135 (88 S Ct 1620, 1627, 20 L Ed 2d 476, 485).

Our disposition makes it unnecessary to consider defendant's other contentions. They are either unlikely to arise on retrial or will emerge in a greatly altered context of evidence.

Defendant's conviction is reversed and the case is remanded for new trial.

All concurred.