PEOPLE v FOWLER
PEOPLE v PENDLETON
PEOPLE v ROBERTS

1. Criminal Law—Constitutional Law—Right to Counsel—Line-ups—Photographic Showups.

The Sixth Amendment right to counsel may be invoked only after the initiation of judicial proceedings, whether by way of formal charge, preliminary hearing, indictment, information, or arraignment; therefore, where a photographic identification or lineup takes place prior to the formal filing of charges, an accused is not entitled to the benefit of counsel at the proceedings.

2. Criminal Law—Identification—Photographic Identification—Due Process.

Improper pretrial identification procedure will cause a conviction to be set aside if the photographic identification procedure employed was so unnecessarily suggestive as to violate due process and ineradicably taint subsequent in-court identification; the trial judge is required to consider the entire evidence submitted which either supports or undermines the assertion that a later in-court identification is based upon independent knowledge and recognition and is required to indicate which evidence justifies admission of the in-court identification.

3. Criminal Law—Photographic Identification—Absence of Counsel—Evidence.

The prosecutor's burden where pretrial photographic identifications of defendants were conducted while they were in the custody of police without their counsel present is to establish

References for Points in Headnotes

[1–4] 21 Am Jur 2d, Criminal Law §§ 368, 369.

29 Am Jur 2d, Evidence § 371.

Admissibility of evidence of lineup identification as affected by allegedly suggestive lineup procedures. 39 ALR3d 487.

by clear and convincing evidence that the in-court identifications were based upon observations of the suspects other than photographic identifications; reversal can occur only where the error is not harmless beyond a reasonable doubt.

4. CRIMINAL LAW—HARMLESS ERROR—EVIDENCE—ADMISSIBILITY.

The harmless error rule was adopted to prevent the reversal of a just conviction due to a technicality; but a caveat has been issued regarding implementation of this rule, indicating the prosecution may be encouraged to introduce testimony of marginal admissibility in a weak case in order to buttress its argument to gain a conviction, hoping the issue will not be raised on appeal.

Appeals from Bay, John X. Theiler, J. Submitted Division 3 January 4, 1973, at Grand Rapids. (Docket Nos. 10907–10910, 10911–10914, 11567–11570.) Leave to appeal denied as to defendant Pendleton, 390 Mich —.

Harold Fowler, Gary Pendleton, and William Roberts were convicted of illegal possession of narcotic drugs, receiving or aiding in the concealment of stolen property, possession of burglary tools with intent to use, and carrying concealed weapons without a license. Defendants appeal. Cases consolidated. Affirmed as to Pendleton; reversed and remanded as to Fowler and Roberts.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Eugene C. Penzien,* Prosecuting Attorney, for the people.

*Wilson & Stone,* for defendants on appeal.

Before: HOLBROOK, P. J., and FITZGERALD and VAN VALKENBURG,* JJ.

FITZGERALD, J. Defendants Harold Fowler, Gary Pendleton and William Roberts were charged with

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

and convicted of illegal possession of narcotic drugs,[1] receiving or aiding in the concealment of stolen property,[2] possession of burglary tools with intent to use,[3] and carrying concealed weapons without a license.[4]

On Sunday, March 22, 1970, at about 2:30 p.m., Susan Johnson, upon entering the Valley Travel Agency in Midland, heard thumping noises coming from the back of the building. After viewing a white powder on the floor, she drove to the police station, advising them of her observations. She was immediately followed back to the office by Officer Caufield. Caufield entered the office, heard the thumping noises, and proceeded to the back of the building. Upon entering the bathroom door, he saw a hole in the wall leading to the adjacent store, LeBeau's Jewelry. He then heard footsteps running from front to back in the jewelry store. He retraced his steps out the front door of the office, got in his car and drove around to the back of the buildings, whereupon he saw two people, a Mr. and Mrs. Cox.

Susan Johnson, who had also exited the front of the office, heard a car door slam up the street. She saw three men in a car parked in front of city hall. The car started toward her, turning right at Larkin, an intersecting street. She was able to positively identify Pendleton as the driver and, aided by photographs, to identify Fowler and Roberts.

Thomas Cox, seen earlier by Officer Caufield, testified that on the afternoon in question he, his wife, his sister-in-law and his two-year-old son were in the Piccadilly Restaurant, which has a

[1] MCLA 335.153; MSA 18.1123.
[2] MCLA 750.535; MSA 28.803.
[3] MCLA 750.116; MSA 28.311.
[4] MCLA 750.227; MSA 28.424.

window facing the alley behind the jewelry store. Cox saw two men running out of the alley onto Larkin street where they were picked up by a blue Cadillac which had been parked across the street from city hall. He had an opportunity to see the driver as the car passed the restaurant.

Victoria Cox, Thomas Cox's wife, also testified to the same sequence of events. She stated that she had an opportunity to observe the driver, since he looked right at them when the car passed the restaurant. At trial, she was able to identify the driver as being defendant Pendleton. Aided by photographs, she was also able to identify defendants Fowler and Roberts as being the two men running in the alley.

Suzanne Schrock, Mrs. Cox's sister, also testified that she saw two men get into a blue and white Cadillac and was able to get a reasonable look at the driver. She identified defendant Pendleton as the driver and defendants Fowler and Roberts as each having a similar build to the two men who emerged from the alley.

After being radioed the description of the car, State Police Troopers Clyde Schell, Gerald Rozema, and James Bremmer stopped the car on I-75 in Bay County. The three suspects were identified by Officer Rozema. Officer Bremmer gave extensive testimony as to the weapons, contraband and stolen merchandise found in the subsequent search of the car. Defendants were then placed under arrest and remained in custody until after their preliminary examinations.

Midland Police Department Detective Edward Cherry conducted photographic identification sessions with the eyewitnesses subsequent to defendants' arrest. He showed a group of 11 pictures to the witnesses. Suzanne Schrock viewed the photo-

graphs the day following defendants' arrest. He testified that he handed them to her and she picked out the three defendants. The Coxes viewed the photographs on March 24, 1970. They also picked out the three defendants. Detective Cherry showed the pictures to Susan Johnson at the Valley Travel Agency on the date that he served her with a subpoena to appear in district court. She also picked out the three defendants.

The defendants were arraigned on March 25, 1970. The preliminary examination was held on April 17 and April 20, 1970. In addition to the photographic identifications, two standard lineups were held with counsel on April 17 and 20, 1970. At the preliminary examination, three of the four eyewitnesses testified and identified the three defendants.

On September 22, 1970, a special hearing on motions was held in circuit court. Among several motions argued was a defense motion to suppress evidence of the photographic lineup and preliminary examination identifications of defendants. The circuit court judge ruled that defendants had no right to have an attorney present during the showing of photographs any more than they would have such a right when interrogating the prisoner. While the court did not recommend the procedure followed regarding the photographic identifications, it was satisfied that the prior knowledge of the witnesses enabled them to recall the defendants they had seen, notwithstanding the fact that their memory was affected by having seen the photographs. The trial court was satisfied that this procedure did not cause a misidentification from the evidence received.

Defendants Fowler and Pendleton stood trial on October 30, 1970. Defendant Roberts was at that

time detained on a separate charge in Ohio. On February 11, 1971, Roberts was convicted in a nonjury trial before the same circuit judge in which it was stipulated that the record of Fowler's and Pendleton's jury trial was to be controlling as to all issues.

Defendants now appeal, raising two issues relevant to the pretrial photographic identification procedures. The first issue is whether defendants were illegally denied their Sixth Amendment right to counsel at pretrial photographic identifications conducted while in the custody of police. Defendants assert that denial of right to counsel at this critical stage of a criminal proceeding renders all evidence obtained from such identification procedures inadmissible at trial. The people advance a litany of state appellate and Federal Court of Appeals decisions supporting the proposition that right to counsel does not exist during a photographic identification where defendant is in police custody at the time the identification occurs. They further argue that if error did occur in the photographic identification procedures, it was harmless.

In *People v Cotton,* 38 Mich App 763 (1972), this Court held that an accused being held in custody is entitled to be represented by counsel at any photographic identification proceeding. This right to counsel was extended to include instances where the identification occurred at a point where the investigation had ceased to be a general investigation of an unsolved crime, but rather had focused upon a specific suspect with the purpose of building a case against him. By eliciting identification evidence, the purpose was to confirm his guilt rather than extinguish a case against an innocent

bystander. In *Cotton,* the defendant was not in custody during the photographic identification,[5] yet the viewing of the photographic displays was admissible. This identification procedure was every bit as critical as the lineup stage, and because of the accusatory nature of the investigation, the right to counsel was not denied by the mere fact that the defendant was temporarily released. *People v Adams,* 19 Mich App 131 (1969); *People v Hutton,* 21 Mich App 312 (1970).

The United States Supreme Court has since decided that the Sixth Amendment right to counsel may be invoked only after the initiation of judicial proceedings, whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.[6] *Kirby v Illinois,* 406 US 682; 92 S Ct 1877; 32 L Ed 2d 411 (1972). This Court has interpreted *Kirby* and modified *Cotton* in *People v Pinette,* 42 Mich App 250, 254–255 (1972):

"*[Kirby]* held that the *Wade-Gilbert*[7] rule of right to counsel does not apply to pre-indictment lineups. The majority opinion sees the formal filing of charges, whether by preliminary hearing, indictment, information, or arraignment, as the cutoff point in the right to

---

[5] Defendant was arrested earlier and appeared with counsel at a lineup. Witnesses present at the scene of the crime were unable to identify the defendant and he was released, his car remaining in police custody. The photographic identification occurred after his release and prior to a second lineup conducted four days later during which one witness identified the defendant as the felon and he was promptly rearrested.

[6] Justice Stewart, in writing for the Court, was careful to emphasize the need to scrutinize *any* pretrial confrontation prior to formal charge of a criminal offense. In citing *Stovall v Denno,* 388 US 293; 87 S Ct 1967; 18 L Ed 2d 1199 (1967), he recognized the need to strike an appropriate constitutional balance between the right of a suspect to be protected from prejudicial procedures and the interest of society in the prompt and purposeful investigation of an unsolved crime.

[7] United States v Wade, 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967), and *Gilbert v California,* 388 US 263; 87 S Ct 1951; 18 L Ed 2d 1178 (1967).

counsel. Although not compelled by *Kirby, supra,* to apply this rule to the State of Michigan, we likewise hold that where a photographic identification or lineup takes place prior to the formal filing of charges, as was the situation in the case now before us, an accused is not entitled to the benefit of counsel at said proceedings. The *Cotton* decision, *supra,* is accordingly modified to that extent."

In the instant case, the photographic identifications occurred on the days subsequent to the issuing of the arrest warrant. The conduct of the police had ceased to be general investigation of an unsolved crime. It had focused upon the accused with the photographic identification conducted with a view to building a case against the accused rather than absolving an innocent bystander. A total of seven photographic identifications occurred between the day of the arrest and the preliminary examination. On the basis of these facts, the defendants were denied their constitutional right to counsel.

Whether this improper pretrial identification procedure will cause the lower court's conviction to be set aside requires further analysis. The issue becomes whether the photographic identification procedure employed was so unnecessarily suggestive as to violate due process and ineradicably taint the subsequent in-court identification. The trial judge is required to consider the entire evidence submitted which either supports or undermines the assertion that a later in-court identification is based upon independent knowledge and recognition. This evidence must be sufficiently purged of the primary taint resulting from an improper pretrial identification. The court is required to indicate which evidence justifies admission of the in-court identification. *People v Hutton, supra,* p 327.

This procedure was not followed. At the hearing, the trial court, though cognizant of statements made by witnesses indicating their memory was affected by having earlier seen the photographs, was satisfied that this procedure did not result in a misidentification of the three defendants.

*Simmons v United States,* 390 US 377; 88 S Ct 967; 19 L Ed 2d 1247 (1968), developed a test for setting aside a photographic identification:

" '[W]e hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' " *People v John Martin,* 37 Mich App 621, 628 (1972).

*Simmons* was soon followed by *People v Childers,* 20 Mich App 639, 646–648 (1969), which also set out a standard for reviewing allegedly improper confrontations held without the assistance of counsel.

"After enunciating the right to counsel at pretrial confrontations, the Supreme Court in *Wade* and companion cases fashioned certain exclusionary rules to ensure the recognition of the right. Under these rules, once it is established that the accused was denied the benefit of counsel, all evidence that the witness identified the accused at the confrontation is to be excluded. *Gilbert v California, supra,* 388 US at 273; 87 S Ct at 1957; 18 L Ed 2d at 1186. Not all evidence bearing on the identity of the perpetrator of the crime is rendered inadmissible by this *per se* exclusionary rule, however. An in-court identification may still be made if, but only if, the prosecution is able to 'establish by clear and convincing evidence that the in-court identification [is based] upon observations of the suspect other than the lineup identification.' *Wade,* 388 US at 240; 87 S Ct at

1939; 18 L Ed 2d at 1164. The test to be used in determining whether the in-court identification can be made independently of the confrontation is that of *Wong Sun v United States,* 371 US 471; 83 S Ct 407; 9 L Ed 2d 441 (1963):

" 'Whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'

"And among the factors to be considered in applying this test are,

" '[T]he prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup.' *Wade,* 388 US at 241; 87 S Ct at 1940; 18 L Ed 2d 1165.

"Finally, neither the admission of evidence that the witness identified the accused at the confrontation nor an in-court identification without a source independent of the confrontation requires reversal of the conviction if the error was harmless. *Wade,* 388 US at 242; 87 S Ct at 1940; 18 L Ed 2d at 1166; *Gilbert,* 388 US at 272; 87 S Ct at 1956; 18 L Ed 2d at 1186."

The admissibility of an in-court identification was further analyzed in *People v Hutton, supra,* pp 327, 328:

"If it appears from the record by clear and convincing evidence that the in-court identification was not tainted by the prior identification or if the evidence shows beyond a reasonable doubt that admission of that identification was harmless, and there is otherwise no error, the conviction will be affirmed."

The prosecutor's burden in this case is to establish by clear and convincing evidence that the in-court identifications were based upon observations of the suspects other than photographic identifications. Reversal can occur only where the error is not harmless beyond a reasonable doubt. *Chapman v California,* 386 US 18; 87 S Ct 824; 17 L Ed 2d 705 (1967).

Michigan has adopted the harmless error rule to prevent the reversal of a just conviction due to a technicality. *People v Wilkie,* 36 Mich App 607 (1971). Yet, a caveat has been issued regarding implementation of this rule, indicating the prosecution may be encouraged to introduce testimony of marginal admissibility in a weak case in order to buttress its argument to gain a conviction hoping the issue is not raised on appeal. *People v Jablonski,* 38 Mich App 33 (1972).

The identification of Pendleton was proved by clear and convincing evidence to be an independent basis. Witnesses Schrock and Johnson unequivocally identified Pendleton as the driver. Both Thomas and Victoria Cox were able to clearly view Pendleton as the driver of the car during the attempted get-away. It cannot be said under these circumstances that the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

The identifications of defendants Fowler and Roberts were not based independently upon the observations of the witnesses without the aid of photographic identifications. The evidence adduced from the witnesses does not indicate that sufficient independent recollection of the two defendants existed. Specific reference by witnesses Schrock and Johnson was made to the effect that the

viewing of the photographs formed the basis of the identification and reinforced their preliminary observations. The Coxes' identifications fall short of even reasonable certainty in that Victoria Cox testified as to her reliance on the photographs in identifying defendants Fowler and Roberts. For this reason alone this identification becomes automatically suspect. It cannot be said that an independent origin existed which enabled the witnesses to make an in-court identification. Having established that there was no independent basis underlying the identification of the two defendants, our next inquiry must determine whether this infirmity constitutes harmless error beyond a reasonable doubt. In *People v Hess,* 39 Mich App 28 (1972), the Court ruled that the failure of a witness to clearly observe the alleged defendant prevented a later in-court identification from being based upon a source of independent origin. The conviction was affirmed on appeal in *Hess* because the defendant was directly implicated by testimony from his accomplice. Thus, no prejudice resulted. Here, no evidence other than the tainted identification testimony placed the two defendants at the scene of the crime. Although the circumstantial evidence is very persuasive as to their complicity in the crime, it cannot be said that the tainted identification was harmless beyond a reasonable doubt. *Hutton, supra,* p 332.

We note in passing that the Michigan Supreme Court has rendered a decision delineating a comprehensive analysis of pretrial identification procedures currently applicable in this state. *People v Anderson,* 389 Mich 155 (1973).

In affirming this Court's decision upholding a conviction involving a suggestive photographic display, the Court determined a subsequent in-court

identification to be accurate on the basis of clear and convincing evidence form a source independent of the suggestive identifications employed.

The convictions of Fowler and Roberts are reversed and remanded for a new trial in which evidence of the pretrial identification shall be inadmissible. The conviction of defendant Pendleton is affirmed.

All concurred.